1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| MOZZY CLARK, | Case No: |
| Plaintiff, | COMPLAINT FOR DAMAGES (JURY TRIAL DEMANDED) |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS; LT. DENNIS SIMONS; SGT. REGINA WILLIAMS; OFFICER THERESA AYOTTE; OFFICER FNU BROOKS; and DOES 1-10. | |
| Defendants. | |

COMPLAINT

THE PIVTORAK LAW FIRM
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

## INTRODUCTION

1. Plaintiff Mozzy Clark was repeatedly sexually harassed and assaulted by a biological male, with whom she was forced to share a cell, at the Washington Corrections Center for Women.

2. Prison officials were well aware that allowing biological males into a female prison creates a substantially increased risk of harm to female prisoners, including intimidation, violence, and sexual assault.

3. Prison officials also knew that allowing biological males into a female prison violates the basic human rights of women, including the right to be safe from the risk of increased harm, and the right to privacy and dignity (by not being compelled to sleep, shower, or otherwise be naked in the presence of incarcerated men, or exposed to the naked bodies of incarcerated men), and the right to not be compelled, coerced, or pressured into using speech that reflects a belief that conflicts with biological reality.

4. Despite this knowledge, Defendants forced Ms. Clark to share a cell with a 6 foot, 4 inch biological male who was known to be a violent, convicted sexual predator.

5. During the time Ms. Clark was locked in a cage with this man, he continually talked to her in a sexually explicit manner, touched his genitals luridly in front of her, threatened Plaintiff with sexual violence, and when prison officials did nothing about this behavior, went on to sexually assault her multiple times.

6. When Ms. Clark complained to prison officials, her objections were laughed off and dismissed by Defendants. They also actively discouraged her from lodging an official complaint or talking about her victimization, all in furtherance of the prison's policy of housing biological males in the women's prison.

7. Because of Defendants' conduct, Plaintiff suffered extreme and permanent trauma and severe emotional distress, the effects of which she continues to suffer today.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiff alleges that Defendants violated 42 U.S.C. § 1983 by depriving her, under color of state law, of rights, privileges, and immunities secured by the First, Eighth, and Fourteenth Amendments.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to the claims alleged herein occurred and are occurring in this district.

## PARTIES

10. Plaintiff, Mozzy Clark, was, at all times relevant herein a prisoner in the Washington Corrections Center for Women ("WCCW") located in Gig Harbor, Washington. She has since been released from custody.

11. The Defendant, Washington State Department of Corrections, is an agency of the State of Washington, and is subject to the waiver of sovereign immunity reflected in RCW 4.92.090.

12. Defendant, Dennis Simons was, at all times relevant herein, a Lieutenant at WCCW, a Correctional Unit Supervisor ("CUS"), and a final policymaker, and is also sued as a supervisory defendant.

13. Defendant, Regina Williams was, at all times relevant herein, a Sergeant at WCCW, a Unit Sergeant, and a final policymaker, and is also sued as a supervisory defendant.

14. Defendant, Theresa Ayotte was, at all times relevant herein, a corrections officer at WCCW.

15. Defendant, FNU Brooks was, at all times relevant herein, a corrections officer at WCCW.

16. The term "policymaker/supervisorial defendants," as used herein, includes persons and/or entities who are not alleged to have been physically at the scene of the actual incidents and succeeding events set forth in this complaint. It is also alleged that prior failures to investigate

611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

and to discipline the misconduct in this case all make the policymaker/supervisorial defendants liable in this case.

17. At all times alleged herein, policymaker/supervisorial defendants had the power, right, and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the laws of the United States, the laws of the State of Washington.

18. The unknown named Defendants includes an unknown named officer who acquiesced in the sexual harassment and assault and battery against Ms. Clark, as is described below, as well as who participated in the conspiracy to sexually harass and assault and batter Plaintiff as a form of punishment, and in the deprivation of Plaintiff's constitutional and human rights, along with unknown named employees of WCCW who were policymakers who created, fostered, acquiesced, ratified and/or maintained the policies, customs and/or practices that caused the deprivation of Plaintiff's constitutional rights.

19. Plaintiff is ignorant of the true names and capacities of those defendants named as Unknown Named Defendants or "Does" or "Roes," though all are believed to have been employed by WCCW or acting in concert with defendants and in the capacity of state actors, but alleges that each such Defendant was responsible for Plaintiff's injuries in some intentional or grossly negligent manner. Plaintiff will amend this complaint to allege the true names and capacities of said defendants when they become known.

20. Defendants, and each of them, did the acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

21. Whenever in this Complaint reference is made to Defendants, such allegations shall be deemed to mean the acts of all Defendants acting individually, jointly, and/or severally.

22. The true names and capacities of defendants named herein as DOES 1-10, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to show true names and capacities of these defendants when they are ascertained.

23. At all times mentioned herein, Defendants, and each of them, were the agents, representatives, employees, successors, assigns, parents, subsidiaries, and/or affiliates, each of the other, and at all times pertinent hereto were acting within the course and scope of their authority as such agents, representatives, employees, successors, assigns, parents, subsidiaries, and/or affiliates. Plaintiff also alleges that Defendants were, at all times relevant hereto, the alter egos of each other. Wherever reference is made to Defendants herein, it is intended to include all of the named Defendants as well as the DOE defendants. Each of the fictitiously named DOE Defendants is responsible for the occurrences herein alleged and proximately caused Plaintiff's damages.

**FACTS**

24. The Incident is the series of events and circumstances that occurred in or about January/February, 2022, before and thereafter, as more fully described in this pleading.

25. While a prisoner at WCCW, Ms. Clark was forced to share a cell with a fully intact biological male.

26. The Defendants responsible for the decision to place this man in Ms. Clark's cell were Sgt. Williams, Lt. Simons, and DOES 1-3.

27. The inmate in question, Christopher Williams, is a convicted sex offender who was incarcerated in the men's prison prior to his transfer to WCCW.

28. After assaulting a corrections officer in the men's prison, Mr. Williams claimed to identify as a woman, and was transferred to WCCW as a result.

29. While at WCCW, and before being moved to Ms. Clark's cell, Mr. Williams was known to the prison staff to have had previous incidents of a sexual nature with his prior female cellmate.

30. Immediately after being moved into Ms. Clark's cell, Mr. Williams began to sexually victimize Ms. Clark.

31. Mr. Williams would frequently talk to Ms. Clark in a sexually explicit way, describing his proclivities and the graphic sexual things he wanted to do to Ms. Clark. He told Ms. Clark that he wanted to have sex with her and how he sold his body to other female inmates. When Ms. Clark would object, Mr. Williams dismissed her saying that all the other females in the prison "wanted" him.

32. At night, Mr. Williams would take out various sex toys kept in his cell, and talk at length about how he wanted to use them on Ms. Clark.

33. In their cell, Ms. Clark was on the bottom bunk. Mr. Williams, who is approximately 6'4", would hover menacingly over Ms. Clark's bunk with an erection while touching himself. He would also display his erection to Ms. Clark against her will, and gesture towards it, saying how much he wanted her.

34. When Ms. Clark complained to Defendants, including officer Brooks, about this conduct, they failed to take any serious action. At first, Brooks laughed it off, saying Mr. Williams' going rate for sex with female inmates was a "bag of chips."

35. After further complaints, Brooks stated he would inform Sgt. Williams about the conduct. However, Sgt. Williams said she could not do anything for fear of retaliation from inmate Williams.

36. Defendants told Ms. Clark that if she complained it would be considered a hate crime and actively discouraged her from filing any complaints. In fact, Brooks told Ms. Clark that Williams had in the past violently retaliated against individuals who complained about him.

37. Mr. Williams' predatory behavior continued to escalate. The words and menacing conduct progressed to sexual assault. At night, Williams started fondling Ms. Clark in her sleep. He would put his hand under Ms. Clark's blanket and touch her legs and her breasts. Some mornings, Ms. Clark would wake up with her shirt lifted above her breasts.

38. One night, Ms. Clark woke up and saw inmate Williams sitting on the floor next to her bed with his arm under her blanket, rubbing her genitals.

39. Defendant Ayotte saw Williams on the floor next to Ms. Clark's bed, knocked on the cell door, and told him to go back to his bunk. However, Ayotte failed to report Williams, and took no other action to stop this inmate from continuing to sexually assault Ms. Clark.

40. In or about February, 2022, prison officials confiscated the large bag of sex toys that Williams had in the cell. However, they took no other action against him. When Ms. Clark asked why, she was again told that they did not want inmate Williams to retaliate against her.

41. However, this had the opposite effect. Inmate Williams started following Ms. Clark everywhere she went. He would follow her into the bathroom and showers to satisfy his perversions and also to keep her from talking to officers. When Ms. Clark would use the toilet, Mr. Williams would frequently come into the next stall and stand over her, watching. He would do the same when Ms. Clark was in the shower, saying depraved things to her. He also started threatening her with violence if she complained about him again.

42. Mr. Williams was known to do this to the other females in the prison as well, to such an extent that he was openly referred to as the "shower shark."

43. Prison officers, including supervisory defendants, knew about all the things inmate Williams was doing, but consistently refused to take any action to stop him.

44. When Ms. Clark complained to officer Brooks, he told her that Mr. Williams was known to violently retaliate against women who complained. Officer Brooks also informed Ms. Clark that inmate Williams was incarcerated for sex crimes, and had regularly masturbated in front of female guards when he was housed in the men's prison. That, of course, was before he decided to begin "identifying" as a female.

45. During this time, Ms. Clark's days were tormented by constant fear and anxiety about being locked in a cage with a much bigger, stronger person – a biologically intact man – who had a known history as a sexual predator. This dread and anguish was exacerbated by the fact that Officer Brooks specifically told her about Mr. Williams' sexual deviance: prison

officials specifically knew about his conduct and the dangers he posed, and not only failed to protect Ms. Clark, but actively ignored her pleas for help pursuant to official prison policy.

46. At night, Ms. Clark had nightmares about what Mr. Williams would do to her at any given moment. She did not have a single moment of peace, having to always be on alert to the imminent threat of sexual and physical violence.

47. The only advice she received from prison officials to separate herself from Mr. Williams was that she could go on suicide watch.

48. The prison therapist that Ms. Clark was seeing also stopped her from talking about this trauma and the fact that she was forced to share a cell with a man.

49. Finally, despite being actively discouraged from doing so by Defendants, Ms. Clark filed a Prison Rape Elimination Act ("PREA") complaint against Williams.

50. Weeks later, Mr. Williams was finally removed from Ms. Clark's cell.

51. However, since Defendants did not remove Mr. Williams from the women's prison, he continued to harass and intimidate Ms. Clark by following her around in the yard and staring at her in a menacing manner.

52. The injuries suffered by Ms. Clark, *e.g.,* being the victim of the cruel and unusual punishment of sexual violence, that was inflicted upon her maliciously and sadistically without probable cause, were caused in part by the longstanding WCCW policy, practice and custom (with the full knowledge of, acquiescence in, approval of and ratification of Defendants). WCCW had and has a policy of locking female prisoners in cells with biological males known to have a history of violence and sexual predation and actively conspiring to, participating in, acquiescing in, ratifying and approving of these policies, practices, and customs.

53. The injuries suffered by Ms. Clark, *e.g.,* being the victim of the cruel and unusual punishment of sexual violence, that was inflicted upon her maliciously and sadistically without probable cause, were caused in part by the longstanding WCCW policy, practice and custom (with the full knowledge of, acquiescence in, approval of and ratification of Defendants). WCCW had and has a policy of ignoring and downplaying female prisoner complaints about being locked in a cage with biological males, as well as discouraging them from filing official

complaints, and actively conspiring to, participating in, acquiescing in, ratifying and approving of these policies, practices, and customs.

# FIRST CAUSE OF ACTION

**DEPRIVATION OF CONSTITUTIONAL RIGHTS—FIRST/EIGHTH/FOURTEENTH AMENDMENTS – *State-Created Danger* – 42 U.S.C. Section 1983**
**(Against all Defendants)**

54. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint, as if fully set forth herein.

55. At the time of the Incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America, under both Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws, under Amendment I to freedom of speech, and under the Eighth Amendment to be free from cruel and unusual punishment, were in force and effect and the individual Defendants who engaged in conduct, as set forth above, who placed a male sexual predator in Plaintiff's cell and ignored her complaints of sexual harassment and assault, subjected Plaintiff to cruel and unusual punishment and deprived Plaintiff of her constitutional rights, which proximately caused the severe and Permanent injuries to Plaintiff.

56. As a further direct and proximate result of said unconstitutional actions and practices, Plaintiff suffered extreme emotional distress, shame, intimidation, humiliation, indignation, embarrassment, and fear.

57. The aforementioned acts of the Defendants, and each of them, support the award of exemplary and punitive damages in an amount sufficient to punish and make an example of the individual Defendants. Said acts of the individual defendants and each of them were done knowingly, willfully, and maliciously, and with the intent to vex, annoy, harass and oppress Plaintiff, because of her assertion of her constitutional rights and to cause her injury and loss of her rights. By reason thereof, Plaintiff requests that said Defendants each be required to pay damages in an amount sufficient to deter others from these acts.

58. As a result, Plaintiff is entitled to compensatory and punitive damages in amounts to be determined at trial.

## SECOND CAUSE OF ACTION

**DEPRIVATION OF CONSTITUTIONAL RIGHTS— FIRST/EIGHTH/FOURTEENTH AMENDMENTS –** *Deliberate Indifference* **– 42 U.S.C. Section 1983**
**(Against all Defendants)**

59. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint, as if fully set forth herein.

60. At the time of the Incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America, under both Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws, under Amendment I to freedom of speech, and under the Eighth Amendment to be free from cruel and unusual punishment, were in force and effect and the individual Defendants who engaged in conduct, as set forth above, who placed a male sexual predator in Plaintiff's cell and ignored her complaints of sexual harassment and assault, subjected Plaintiff to cruel and unusual punishment and deprived Plaintiff of her constitutional rights, which proximately caused the severe and Permanent injuries to Plaintiff.

61. As a further direct and proximate result of said unconstitutional actions and practices, Plaintiff suffered extreme emotional distress, shame, intimidation, humiliation, indignation, embarrassment, and fear.

62. The aforementioned acts of the Defendants, and each of them, support the award of exemplary and punitive damages in an amount sufficient to punish and make an example of the individual Defendants. Said acts of the individual defendants and each of them were done knowingly, willfully, and maliciously, and with the intent to vex, annoy, harass and oppress Plaintiff because of her assertion of her constitutional rights, and to cause her injury and loss of her rights. By reason thereof, Plaintiff requests that said Defendants each be required to pay damages in an amount sufficient to deter others from these acts.

63. As a result, Plaintiff is entitled to compensatory and punitive damages in amounts to be determined at trial.

### THIRD CAUSE OF ACTION

**DEPRIVATION OF CONSTITUTIONAL RIGHTS—FIRST/EIGHTH/FOURTEENTH AMENDMENTS –** *Conspiracy* **– 42 U.S.C. Section 1983**
**(Against all Defendants)**

64. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint, as if fully set forth herein.

65. At the time of the Incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America, under both Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws, under Amendment I to freedom of speech, and under the Eighth Amendment to be free from cruel and unusual punishment, were in force and effect and the individual Defendants who engaged in conduct, as set forth above, who placed a male sexual predator in Plaintiff's cell and ignored her complaints of sexual harassment and assault, subjected Plaintiff to cruel and unusual punishment and deprived Plaintiff of her constitutional rights, which proximately caused the severe and Permanent injuries to Plaintiff.

66. Defendants conspired together to deprive Plaintiff of her civil rights in violation of 42 U.S.C. § 1983. The conspiracy included those who created the policy of placing biological males in the same cell as female prisoners, who ignored female prisoner complaints, and who looked the other way when female prisoners were harassed and assaulted by male prisoners at WCCW, as described herein.

67. The conspirators engaged in overt acts in furtherance of the conspiracy, including, but not limited to, ignoring female prisoner complaints about male prisoners at WCCW, and actively discouraging female prisoners from filing complaints.

68. As a further direct and proximate result of said unconstitutional actions and practices, Plaintiff suffered extreme emotional distress, shame, intimidation, humiliation, indignation, embarrassment, and fear.

69. The aforementioned acts of the Defendants, and each of them, support the award of exemplary and punitive damages in an amount sufficient to punish and make an example of the individual Defendants. Said acts of the individual Defendants and each of them were done knowingly, willfully, and maliciously, and with the intent to vex, annoy, harass and oppress Plaintiff because of her assertion of her constitutional rights, and to cause her injury and loss of her rights. By reason thereof, Plaintiff requests that said Defendants each be required to pay damages in an amount sufficient to deter others from these acts.

70. As a result, Plaintiff is entitled to compensatory and punitive damages in amounts to be determined at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable as of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.  General and compensatory damages for Plaintiff for the violations of her state and federal constitutional and statutory rights, emotional distress, humiliation, and anguish, all according to proof;

B.  Nominal damages, according to proof;

C.  Punitive damages, according to proof;

D.  Attorneys' fees, costs, interest, and expenses pursuant to 42 U.S.C. §1988, and any other applicable source of law.

E.  And such other and further relief as the Court may deem proper.

Respectfully submitted this 27th day of December, 2024.

**ROBERT A. BOUVATTE, PLLC**

By: _____
Robert A. Bouvatte, Jr., WSBA #50220
P.O. Box 14185
Tumwater, WA 98511
PH: (564) 999-4005
bob@rbouvattepllc.com
rbouvattelaw@gmail.com

**THE PIVTORAK LAW FIRM**

By: _____
David Pivtorak, Cal. Bar, #255943
611 Wilshire Boulevard
Suite 911
Los Angeles, CA 90017
PH: (213) 291-9130
david@piv4law.com
* *Pro Hac Vice* application forthcoming