The Honorable Tiffany M. Cartwright

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| MOZZY CLARK,<br>Plaintiff,<br>v.<br>STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS; LT. DENNIS SIMONS; SGT. CARRIE ANN WILLIAMS A/KA CARRIE ANN GUAJARDO; EDWIN SCHULZE; OFFICER THERESA AYOTTE; OFFICER GREGORY BROOKS; and DOES 1-10.<br>Defendants. | NO. 3:24-CV-06058-TMC<br>MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS SCHULZE, SIMONS, AND WILLIAMS<br>Note on Motion Calendar: July 27, 2026<br>ORAL ARGUMENT REQUESTED |

## I. INTRODUCION

Defendants Edwin Schulze, Dennis Simons, and Carie Ann Williams (Guajardo)[1] move for summary judgment on all Plaintiff Mozzy Clark's claims pursuant to Fed. R. Civ. P. 56. Plaintiff, a former Washington State Department of Corrections ("DOC") inmate who was housed at the Washington Correctional Center for Women ("WCCW"), asserts claims under 42 U.S.C. § 1983 under various theories against current and former DOC employees based on

[1] Defendant Williams now goes by the last name Guajardo, but this motion uses her former name due to it being used in documents from the relevant time period. Defendant Williams' first name is misspelled in the caption of the Third Amended Complaint.



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

allegations that she was sexually assaulted and harassed by another inmate. Each of Plaintiff's theories fail, because there is insufficient evidence to establish a prima facie case and/or the Defendants are entitled to qualified immunity.

## II. STATEMENT OF FACTS

Plaintiff Mozzy Clark was previously incarcerated at the WCCW to serve time for several felony convictions. *Declaration of Edwin Schulze* ("*Schulze Decl.*"), ¶ 3; *Declaration of John R. Nicholson* ("*Nicholson Decl.*"), Exh. 3. Christopher (a.k.a Christy) Williams is a transgender female inmate who also resided at WCCW. *Id.*, ¶ 3. Plaintiff and Inmate Williams were housed in the same cell for ten days between February 10, 2022 and February 20, 2022. *Schulze Decl.*, ¶ 4 and Exhs. 1-2.

Plaintiff agreed to Inmate Williams' request to move into her cell, because Williams complained that her prior cellmate was harassing her. *Nicholson Decl.*, Exh. 1. (Clark dep., 52:1-55:23). Plaintiff voluntarily signed a room change form and did not voice any objections to sharing a cell with Inmate Williams, whom Plaintiff knew to be transgender. *Id.*, Exh. 1 (Clark dep., pp. 56:21-58:12). Plaintiff was already familiar with the process of making a voluntary request for a change in cellmates from prior experience. *Id.*, Exh. 2 (Clark dep. Vol. 2, pp. 192:5-193:14). She had met Inmate Williams when they were on a transport bus, then spent time together in receiving at WCCW for four or five weeks. *Id.*, Exh. 1 (Clark dep., pp. 46:8-47:1) Edwin Schulze, a Correctional Unit Supervisor at WCCW, appears from a contemporaneous email to have been involved in approving the cell transfer request. *Schulze Decl.*, ¶ 6 and Exh. 4.

Cell assignments at WCCW are governed by several DOC policies and procedures, including WCCW Operational Memorandum 420.140. *Schulze Decl.*, ¶ 6. Plaintiff and Inmate Williams made a request for a courtesy move under the memorandum, which may be approved by DOC on a case-by-case basis. *Id.*, ¶ 6. To qualify, the individuals must have been housed at



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

WCCW for at least 30 days, have no guilty findings for general infractions in the prior 60 days, and have no guilty findings for serious infractions in the prior 90 days. *Id.*, ¶ 6 and Exh. 4.

Cell assignments are also governed by DOC Policy 490.820, *Prison Rape Elimination Act (PREA) Risk Assessments and Assignments*. *Id.*, ¶ 7 and Exh. 5. Under the policy, each incarcerated individual must periodically have a PREA risk assessment ("PRA"). *Id.*, ¶ 7. The PRA score results in one of the following risk identifiers being assigned to each inmate: no risk; potential risk for sexual predation; potential risk for sexual victimization; or dual identified. *Id.*, ¶ 7. When two inmates are assigned to the same cell, their respective PRA risk identifiers must be reviewed for compatibility. *Id.*, ¶ 7. Policy 490.820 provides that an inmate who has a PRA identifier of risk for sexual victimization must not be placed with an inmate whose identifier is risk for sexual predation or dual identified. *Id.*, Exh. 5. Further, an inmate who has dual identified status must only be housed in the same cell with an inmate who has a no risk identifier. *Id.*, Exh. 5.

The most recent PRAs DOC completed on Plaintiff and Inmate Williams prior to Inmate Williams' February 10, 2022 cell transfer occurred on December 1, 2021. *Id.*, ¶ 8 and Exhs. 6-7. At that time, Plaintiff had a no risk identifier, while Inmate Williams was dual identified. *Id.*, ¶ 8 and Exhs. 6-7. Therefore, at the time of Inmate Williams' transfer into Plaintiff's cell, Plaintiff's and Inmate Williams' PRA risk identifiers were compatible. *Id.*, ¶ 8.

Defendants in this matter have retained Alix McLearen, Ph.D., as an expert witness on operations standards for correctional facilities. *Nicholson Decl.*, Exh. 4. Dr. McLearen previously worked for the federal Bureau of Prisons for 22 years and served as the first National Administrator for its Office of Women and Special Populations. *Id.*, Exh. 4. She also served as its national PREA Coordinator and drafted its first policy on managing transgender individuals in federal custody. *Id.*, Exh. 4. Based on her review of discovery in this matter, Dr. McLearen explains:



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

> [T]he . . . decision to house Ms. Williams and Ms. Clark together occurred after both individuals expressed willingness to become cellmates after Ms. Clark signed documentation agreeing to the arrangement. At the time the cell assignment occurred, there was no documented report indicating that Ms. Clark had raised concerns regarding sexual misconduct or safety involving Ms. Williams. In correctional environments, voluntary cell moves approved by staff are a common housing management practice when no identified conflict exists.

*Id*., Exh. 4 (McLearen Report, ¶ 74). Dr. McLearen determined that "[t]he available information . . . did not indicate that the housing arrangement presented a known risk requiring staff action." *Id*., Exh. 4 (McLearen Report, ¶ 75) (emphasis added). Plaintiff has disclosed no expert to rebut this conclusion. *Id*., ¶ 5.

Plaintiff testified that Inmate Williams began exhibiting inappropriate behaviors within a day after the cell transfer. *Id*., Exh. 1 (Clark dep., p. 71:17-20). She first recalls Inmate Williams sitting on her bed talking about her penis getting erect, rubbing it through her clothing, and stating that she "hates it when it fills up with blood." *Id*., Exh. 1 (Clark dep., pp. 71:21-72:23). Plaintiff responded to these comments by stating, "Uh, okay, I don't want to hear that." *Id*., Exh. 1 (Clark dep., p. 72:7-13). Plaintiff confirmed that Inmate Williams never pulled out or exposed her genitals. *Id*., Exh. 1 (Clark dep., pp. 72:24-73:10).

Plaintiff testified Inmate Williams then began following her into the bathroom on a regular basis and trying to engage her in conversation while showering. *Id*., Exh. 1 (Clark dep., pp. 73:11-74:6). Plaintiff clarified the shower stalls were private, but that the doors to the stalls were approximately chest-high and that Inmate Williams could see over the top due to her being tall. *Id*., Exh. 1 (Clark dep., pp. 74:13-75:1, 76:18-22). Plaintiff testified that each row of cells has its own bathroom, and that inmates are supposed to use the bathroom nearest their cell unless they request permission to use a different one. *Id*., Exh. 1 (Clark dep. pp. 75:16-76:5). The only occasion when Plaintiff requested permission to use one of the other bathrooms was when her assigned bathroom was closed for cleaning. *Id*., Exh. 1 (Clark dep., p. 76:6-10). She never made a request to use one of the other bathrooms at any time while Inmate Williams was sharing her



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

cell. *Id*., Exh. 1 (Clark dep., p. 76:11-15). Although Plaintiff stated this behavior occurred on multiple occasions, Plaintiff could not identify a single other witness who was present to observe Inmate Williams looking into her shower stall. *Id*., Exh. 1 (Clark dep., pp. 76:23-77:15).

During her deposition, Plaintiff was asked about any sexual comments Inmate Williams made to her. *Id*., Exh. 1 (Clark dep., pp. 78:3-79:19). Plaintiff testified that at one point Inmate Williams made the statement to her, "I don't understand – I don't know why you don't want it when other girls are willing to pay for it." *Id*., Exh. 1 (Clark dep., p. 78:3-78:11). On another occasion, Plaintiff testified Inmate Williams said, "I just want you to know I can get you whenever I want." *Id*., Exh. 1 (Clark dep., p. 79:2-13).

Plaintiff testified to a single occasion where she woke up to Inmate Williams touching her. *Id*., Exh. 1 (Clark dep., pp. 80:25-81:5). She stated that Inmate Williams was sitting on the floor wearing shorts and a shirt and had one of her hands down Plaintiff's pants. *Id*., Exh. 1 (Clark dep., pp. 79:20-81:18-21,100:14-101:16). Plaintiff was wearing underwear and is uncertain whether Inmate Williams' hand was inside or outside the underwear. *Id*., Exh. 1 (Clark dep., pp. 101:17-102:6). Plaintiff testified Officer Ayotte pounded on the door and stated, "What are you doing? Why are you down there? Get back up on your bed." *Id*., Exh. 1 (Clark dep., p. 81:6-14). Inmate Williams then got back up and returned to her bed. *Id*., Exh. 1 (Clark dep., p. 81:15-17). There were no other incidents where Inmate Williams touched Plaintiff. *Id*., Exh. 1 (Clark dep., p. 102:21-25).

Plaintiff testified that on another occasion, Inmate Williams showed her homemade sex toys "and asked [Plaintiff] to use them on [her]." *Id*., Exh. 1 (Clark dep., pp. 83:2-84:3; 78:12-15). Plaintiff refused this request, and Inmate Williams then hid the sex toys in a typewriter she kept. *Id*., Exh. 1 (Clark dep., p. 84:6-24). Plaintiff testified she then told Officer Brooks about the sex toys and made clear that she did not want Inmate Williams to know that she had reported



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

them. *Id*., Exh. 1 (Clark dep., pp. 90:24-92:5). Plaintiff had no further discussions with Inmate Williams about the sex toys. *Id*., Exh. 1 (Clark dep., p. 92:14-17).

On February 19, 2022, a search of Plaintiff's and Inmate Williams' cell by officers resulted in discovery of the sex toys and other prohibited items. *Guajardo Decl*., Exh. 1. That day, Defendant Carie Williams (Guajardo) interviewed Inmate Williams, who admitted the prohibited items were hers. *Id*., Exh. 2. Although Inmate Williams was ultimately disciplined for having the sex toys, the mere fact that she was in possession of sexually explicit prohibited items was not a violation of DOC's PREA policy or something that would require Inmate Williams to be removed from her cell or separated from her cellmate. *Id*., ¶ 7. No information was reported to Defendant Williams to indicate Inmate Williams had engaged in any conduct that would qualify as sexual harassment, sexual assault, sexual abuse, or conduct prohibited by the PREA policy. *Id*., ¶ 8.

The following day – February 20, 2022 – Plaintiff made a PREA complaint against Inmate Williams to Sgt. Joshua Benson and Lt. Francisco Garcia. *Simons Decl*., ¶ 4 and Exh. 1. Immediately after Plaintiff made the PREA complaint, Inmate Williams was removed from Plaintiff's cell. *Id*., ¶ 4; *Nicholson Decl*., Exh. 1 (Clark dep., p. 70:18-23). As documented by Sgt. Benson and Lt. Garcia, indicated Plaintiff made the following allegations:

> I/I Betz stated that her cell mate I/I Williams, Christopher had two sex toys yesterday 02/19/22 and that she asked her if she wanted to use them. I/I Betz notified unit staff and both sex toys were confiscated. I/I Betz stated that I/I Williams made veiled threats of retaliation if a PREA was filed against her in regards to the sex toys. I/I Betz also stated that I/I Williams follows her to the bathroom and peaks over the shower stalls when she is showering. I/I Betz stated that I/I Williams will constantly sit next to her bed instead of on her own bunk after making IO/I Betz uncomfortable. I/I Betz was given a PREA investigation process form. Duty Officer AS Arnold was notified. Per ASP Arnold I/I Williams was placed in segregation pending investigation without incident.

*Simons Decl*., Exh. 1.



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

Defendant Lt. Dennis Simons was assigned to conduct an investigation into Plaintiff's PREA complaint and interviewed Plaintiff on March 26, 2022, just over a month after Inmate Williams had been removed from her cell. *Id.*, ¶¶ 4-5. Plaintiff agreed that this interview by Lt. Simons was the only conversation she ever had with him about Inmate Williams. *Nicholson Decl.*, Exh. 1 (Clark dep. 115:6-12). Lt. Simons prepared a written interview summary, which he asked Plaintiff to review and initial if it was complete and accurate. *Simons Decl.*, ¶ 5. As is his practice during PREA investigations, he informed Plaintiff that if she believed any information should be corrected or that additional information should be included, she could make changes to the interview summary. *Id.*, ¶ 5. Plaintiff initialed the interview summary, which did not indicate Inmate Williams had sexually assaulted Plaintiff, sexually touched her, or masturbated in front of her. *Id.*, ¶ 6. Although Plaintiff agrees she initialed the interview summary, she claims she did not read it first. *Nicholson Decl.*, Exh. 1 (Clark dep., pp. 103:20-104:16). Contrary to what she initialed as the complete and accurate summary of her interview, Plaintiff claims she also "told [Simons] about [Inmate Williams] setting next to my bed . . . about my shirt being pulled up, . . . about the time when [she] was pulling [her] hands out of my pants." *Id.*, Exh. 1 (Clark dep., pp. 115:6-22).

At the conclusion of Lt. Simons' PREA investigation, he forwarded his written interview summaries and all evidence he collected to then WCCW Superintendent Charlotte Headley. *Simons Decl.*, ¶8. On April 28, 2022, Superintendent Headley made written findings in which she found substantiated the allegation that Inmate Williams had sexually harassed Plaintiff with threats of retaliation if a PREA complaint were filed about the sex toys. *Id.*, Exh. 3. She determined the allegation that Inmate Williams followed Plaintiff into the bathroom and watched her shower to be unsubstantiated. *Id.*, Exh. 3.

Plaintiff could not recall ever having any type of conversation with Schulze about any of Inmate Williams' concerning behaviors. *Nicholson Decl.*, Exh. 2 (Clark dep. Vol. 2, pp. 191:11-



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

192:4). Schulze confirms that during the ten-day period Plaintiff and Inmate Williams were celled together, there were no facts, allegations, or concerns relating to them that came to his attention. *Schulze Decl.*, ¶ 9.

Plaintiff also recalled having only one conversation with Defendant Sergeant Carie Williams (a.k.a. Carie Guajardo) relating to Inmate Williams prior to Inmate Williams' removal from her cell. *Nicholson Decl.*, Exh. 1. (Clark dep., pp. 111:25-112:3; 114:4-11) During that conversation, Plaintiff mentioned Inmate Williams' comments to her about her genitals "filling up with blood" and that Inmate Williams would follow her into the bathroom, and otherwise "just told [Defendant Williams] that [she] felt uncomfortable, that [she] didn't want to be in the room with [Inmate Williams] anymore." *Id.*, Exh. 1 (Clark dep., p. 112:4-12). Plaintiff did not complain to Defendant Williams that Inmate Williams had sexually touched her, nor did Plaintiff know about or mention Inmate Williams' sex toys during this conversation. *Id.*, Exh. 1 (Clark dep., 112:16-19).

## III. STATEMENT OF ISSUES

A. Does Plaintiff have sufficient evidence to establish a prima facie case against Defendants Schulze, Simmons, or Williams for any of her theories under 42 U.S.C. § 1983?

B. Are Defendants Schulze, Simmons, and Williams each entitled to qualified immunity?

## IV. EVIDENCE RELIED UPON

Defendants rely on the pleadings and the Court's file herein, as well as the following documents filed contemporaneously with this motion:

(1) Declaration of John R. Nicholson with Exhibits 1-5 thereto;

(2) Declaration of Edwin Schulze with Exhibits 1-7 thereto;

(3) Declaration of Carie Guajardo (Williams) with Exhibits 1-5 thereto; and

(4) Declaration of Dennis Simons with Exhibits 1-3 thereto.

## V. ARGUMENT



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

Summary judgment is appropriate if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. Rule Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). There is no genuine issue of fact if the party opposing the motion "fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by evidentiary facts. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The evidence must be viewed in the light most favorable to the non-moving party. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003). Summary judgment is required if, on the record taken as a whole, a rational trier of fact could not find in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

**A. Standards Governing Liability of Individually Sued Defendants Under § 1983**

In order to maintain an action under § 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law and (2) the conduct deprived the person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). Plaintiff asserts three claims against the defendants, all pursuant to § 1983. First, Plaintiff asserts that the defendants are liable under a substantive due process or state-created danger theory. *Dkt. 68*, ¶¶ 55-59. Second, Plaintiff asserts an Eighth Amendment deliberate indifference theory. *Id.*, ¶¶ 60-64. Third, Plaintiff asserts a cause of action alleging a conspiracy to violate her constitutional rights. *Id.*, ¶¶ 65-71; And finally, Plaintiff asserts a right to bodily privacy theory. *Id.*, ¶¶ 72-79. Each of these claims fails for reasons outlined in more detail below.



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

Plaintiff's four claims must be analyzed under the following rules governing § 1983 claims asserted against officials in their individual capacities.

**1. Plaintiff Must Prove Each Individual Defendant's Personal Participation in an Alleged Constitutional Deprivation**

Significantly, Defendants Schulze, Simons, and Williams held supervisory-level positions: Simons is a lieutenant, Williams was a sergeant, and Schulze is a correctional unit supervisor. While supervisory level defendants have responsibilities to oversee subordinate employees, there is no vicarious liability under § 1983, and a plaintiff must therefore prove that each government official, through that official's own actions, violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, the term "supervisory liability" is something of a "misnomer," because "[e]ach Government official, his title notwithstanding, is only liable for his or her own misconduct." *Id*. at 677. "A supervisor may be liable under § 1983 only if there exists either '(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (quoting *Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991), and *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

**2. Plaintiff Bears the Burden of Defeating Each Individual Defendant's Assertion of Qualified Immunity**

The qualified immunity doctrine provides a public official performing discretionary functions immunity in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Qualified immunity is an "immunity from suit rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 272 (2001). The plaintiff bears the



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

burden of establishing that an official's conduct violated rights that were clearly established at the time in order to overcome the official's assertion of qualified immunity. *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Where, as here, the defendants have asserted qualified immunity in a summary judgment motion brought after substantial discovery has taken place, the plaintiff must present evidence to overcome qualified immunity and cannot rely on mere allegations. *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

The Supreme Court has reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that "every reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

The key inquiry is whether the official had "fair notice that her conduct was unlawful." *Kisela v. Hughes*, 548 U.S. 100, 114, 138 S. Ct. 1148, 200 L.Ed.2d 449 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam)). Though fair notice "do[es] not require a case directly on point," it does require that existing precedent has put the "constitutional question beyond debate." *Taylor v. Barkes*, 575 U.S. 822, 825, 135 S.Ct. 2042, 192 L.Ed.2d 78 (2015) (per curiam). When the case law, in factual terms, does not create a bright line forbidding specific conduct, qualified immunity almost always protects the defendant. *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000). This high standard is intended to give government officials breathing room "to make reasonable but mistaken judgments about open legal questions." *Iqbal*, 563 U.S. at 743. "[I]t protects all but the plainly incompetent or those who knowingly violate the law." *Id*. Because qualified immunity is a fact-intensive inquiry



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

that considers the reasonableness of each particular defendant's conduct, "in resolving a motion for summary judgment based on qualified immunity, a court must carefully examine the specific factual allegations against each individual defendant . . ." *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir 2000) (emphasis added).

**B. Plaintiff's Eighth Amendment Claim Fails**

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed2d 811 (1994) (internal quotation marks, ellipsis, and citation omitted). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety". *Id.* at 834. "First, the deprivation alleged must be, objectively, "sufficiently serious." *Id.* Second, the prison official must have a "sufficiently culpable state of mind," which must amount to "deliberate indifference" to an inmate's health and safety. *Id.*

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Meeting this standard requires showing more than an ordinary lack of due care. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *see also Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). "[M]ere malpractice, or even gross negligence, does not suffice." *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The deliberate indifference standard also requires that a plaintiff show a defendant's actions were both an actual and proximate cause of the plaintiff's injuries. *Lemire v. Calif. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). This means that "[t]he prisoner must



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

set forth specific facts as to each individual defendant's deliberate indifference." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

**1. Defendant Schulze**

There is no evidence from which a jury could reasonably infer that Defendant Schulze was deliberately indifferent to a risk of serious harm. Defendants anticipate Plaintiff will point to remote prior convictions or misconduct by Inmate Williams to argue deliberate indifference. However, "speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to . . . future health" to establish the requisite showing of risk. *Williams v. Wood*, 223 Fed. Appx. 670, 671 (9th Cir. 2007) (unpublished); *see also Khan v. Pantoja*, No. 24-cv-03904 BLF(PR), 2024 WL 4951262, *3 (N.D. Cal. Dec. 2, 2024) ("The fact that Defendant Perez had several complaints against him is not sufficient to establish that there existed a serious risk of harm to Plaintiff."). The mere fact that an official permits two inmates to be housed together, even where there is a history of violent behavior and some hypothetical risk of violence, is insufficient to state a claim under the Eighth Amendment. *See, e.g., Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1161 (9th Cirt. 2013) (holding placement of two inmates who were from opposing gangs together in the same cell where plaintiff had been in fight with another member of rival gang three days earlier was insufficient to establish deliberate indifference of prison officials); *Byerly v. Deputy Warden*, 246 Fed. Appx. 512, 514-15 (9th Cir. Aug. 31, 2007) (unpublished) (holding denial of protective segregation to sex offender subsequently attacked by three inmates was not deliberate indifference); *Pendergast v. Whatcom County*, No. C07-435-JLR, 2008 WL 3850665, at *5 (W.D. Wash. Aug. 14, 2008) (fact that two inmates housed together had previously had a fight did not constitute deliberate indifference).

For example, in *Labatad* the plaintiff was placed into a cell with another inmate, Mara, who was a member of a rival gang with whom the plaintiff had been in a fight three days earlier. *Labatad*, 714 F.3d at 1157. After Mara assaulted Labatad, Labatad brought an Eighth Amendment



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

claim under § 1983. *Id*. at 1158. The Ninth Circuit concluded that "[t]he record, viewed objectively and subjectively, [was] insufficient to preclude summary judgment on the claim that SCC prison officials were deliberately indifferent to a substantial risk that Mara would assault Labatad if the two were housed in the same cell." *Id*. at 1161. The Court reasoned that the two inmates had previously spent an extended period of time together in general population with no threats or problems between them, there had been no designation requiring that the two inmates be kept separate, and both inmates in the earlier fight had represented it had not arisen out of a gang-related dispute. *Id*. at 1161. The Court noted that although "the failure to give advance notice of a specific threat is not dispositive, there [was] no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of a substantial risk to Labatad if he was placed in a cell with Mara." *Id*.

The same reasoning applies here with respect to Defendant Schulze. Schulze had no knowledge of any prior threats, disagreements, or conflicts between Plaintiff and Inmate Williams, and indeed there were none. During the ten days that Plaintiff and Inmate Williams shared a cell, neither Plaintiff nor anyone else brought any concerns about Inmate Williams to Schulze's attention. Without some basis for inferring Schulze's knowledge of a substantial risk that Inmate Williams would sexually assault or otherwise harm Plaintiff, there is no basis for any claim against him. *See Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) (affirming summary judgment on Eighth amendment claim based on inmate sexual abuse where plaintiff never disclosed abuse to officials until after events occurred). The record reflects that Plaintiff's and Inmate Williams' PRA risk assessment identifiers were compatible, such that housing them together was appropriate under DOC policy. Given the above and the fact that Plaintiff and Inmate Williams voluntarily requested to be celled together, no reasonable jury could find Plaintiff has not made the objective showing that Schulze knew of a substantial risk of serious harm to Plaintiff if she were in the same cell with Inmate Williams. Additionally, Plaintiff lacks any evidence to



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

establish the subjective component of deliberate indifference. There is no evidence that Schulze subjectively drew the inference that a substantial risk of serious harm existed and then ignored that risk.

Even if there were a triable issue of fact on deliberate indifference, Plaintiff still cannot overcome Schulze's assertion of qualified immunity. The qualified immunity defense "requires an additional inquiry into whether a reasonable officer would have understood that that his decision was impermissible under the Eighth Amendment." *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1045 (9th Cir. 2002). "Even though the constitutional issue turns on the officers' state of mind (here, deliberate indifference to a substantial risk of serious harm), courts still must consider whether – assuming the facts in the injured party's favor – it would be clear to a reasonable officer that his conduct was unlawful." *Id*. "[A] reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity." *Id*. at 1050 (citing *Saucier*, 533 U.S. at 205).

In *Ford*, the estate of an inmate who had been attacked and killed by his cellmate in a prison's psychiatric segregation unit brought claims under § 1983 against officials based upon their decision to house the two inmates together. *Id*. at 1045-48. The officials knew that the victim's cellmate had an extensive history of violent behavior towards inmates and staff, that the cellmate had acted bizarrely and aggressively toward the victim several weeks earlier, and that another officer had noted in his file that he believed the cellmate should be single-celled. *Id*. at 1048. Reversing the district court's denial of summary judgment, the Ninth Circuit determined "neither *Farmer* nor subsequent authorities has fleshed out 'at what point a risk of inmate assault because sufficient substantial for Eighth Amendment purposes.'" *Id*. at 1051 (quoting *Farmer*, 511 U.S. at 834 n.3). Despite the inmate's prior violent history and concerning



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

behaviors, the Ninth Circuit determined the defendant officials "are entitled to qualified immunity because it would not have been clear to a reasonable correctional officer knowing what each knew (viewed in the light most favorable to the Fords) that double-celling [the victim and his cellmate together] post such a substantial risk of serious harm that doing so would be constitutionally impermissible." *Id*. at 1053.

The same reasoning that resulted in the defendant officers' qualified immunity in *Ford* applies to Defendant Schulze here. While Plaintiff may point to earlier violent crimes and misconduct committed by Inmate Williams long before February 2020, *Ford* makes clear that this is insufficient to establish that allowing Inmate Williams to transfer into Plaintiff's cell was objectively unreasonable and constitutionally impermissible. Plaintiff can point to no authority "fleshing out" at what point a hypothetical risk of harm became so substantially serious that housing Plaintiff and Inmate Williams together would become a violation of Plaintiff's Eighth Amendment rights. Dr. McLearen, a preeminent authority on PREA and issues of transgender housing in prisons with a decades-long career in the Bureau of Prisons, concluded that allowing Plaintiff and Inmate Williams to share a cell was appropriate. Given all of this, Plaintiff cannot defeat Schulze's qualified immunity.

**2. Defendant Williams**

There is likewise no basis to find that Defendant Williams was deliberately indifferent according to Eighth Amendment standards. There is no evidence Defendant Williams was involved in approving the courtesy request that Inmate Williams be transferred to Plaintiff's cell. And as previously described, Plaintiff only recalled having one conversation with Defendant Williams about Inmate Williams, during which Plaintiff noted Inmate Williams' remarks about her genitals "filling up with blood," described Inmate Williams following her into the bathroom, and stated she did not want to continue living in the same cell based on her being uncomfortable. Plaintiff concedes she did not disclose that Inmate Williams had sexually



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

touched her, nor did she complain about the sex toys that were eventually confiscated from the cell.

Importantly, Plaintiff has no constitutional right to a cellmate of her choice. *Turner v. Ralkey*, No. 3:20-CV-5472-TL-DWC, 2022 WL 18460747, at *10 (W.D. Wash. April 26, 2022) (citing cases), report and recommendation adopted, 2023 WL 401931 (W.D. Wash. Jan. 25, 2023). Accepting Plaintiff's testimony about her conversation with Defendant Williams as true, objectively there was nothing Plaintiff related to put Defendant Williams on notice of a substantial risk that Plaintiff would be harmed. The fact that Plaintiff was uncomfortable around Inmate Williams or objected to some of her behaviors does not equate to a substantial risk of serious harm. Further, Plaintiff has no evidence that Defendant Williams subjectively drew the conclusion that a substantial risk of harm existed and then ignored it.

Plaintiff similarly is unable to present facts or case law that would overcome Defendant Williams' assertion of qualified immunity under *Ford*. Even assuming Defendant Williams was aware of facts from which a risk of harm could be recognized, there is no authority "fleshing out" where the relative degree of risk becomes sufficiently substantial for Eighth Amendment purposes. Again, Plaintiff can point to no authority holding that it was constitutionally impermissible for Defendant Williams to allow Plaintiff and Inmate Williams to continue to be housed together after the single conversation they had.

**3. Defendant Simons**

Defendant Simons was not involved in the decision to allow Inmate Williams to transfer to Plaintiff's cell, and Plaintiff admits the only conversation she had with him was when he interviewed her as part of DOC's investigation into her PREA complaint over a month <u>after</u> Inmate Williams had already been removed from Plaintiff's cell. Given this, it is clear Defendant Simons did not personally participate in any violation of Plaintiff's Eighth Amendment rights.



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

If Plaintiff contends Defendant Simons can be liable for an alleged deficient investigation into her PREA complaint, she fails to state a cognizable claim against him. A claimed failure to conduct an adequate investigation is not actionable under § 1983. *Lovell v. Poway Unif. School Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) ("Section 1983 limits a federal court's analysis to the deprivation of rights secured by federal 'Constitution and laws.'"); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (No claim under § 1983 based on failure to conduct a full and fair police investigation); *Barela v. Stockton Police Dept.*, No. 2:22-cv-1209 TLN DB P, 2023 WL 358994, *4 (E.D. Cal. Jan. 23, 2023) (dismissing jail inmate's claim against police for failure to investigate). Even accepting as true Plaintiff's testimony that Defendant Simons' written summary of her interview was not complete, these facts do not give rise to any actionable claim against him.

**B. Plaintiff's State Created Danger Substantive Due Process Claim Fails**

Plaintiff's Third Amended Complaint alleges a § 1983 claim designated as a "state-created danger" theory. *Dkt. 68*, ¶¶ 55-59. In a narrow set of circumstances, federal courts have recognized a state-created danger claim as part of an individual plaintiff's substantive due process rights. *See, e.g., Martinez v. City of Clovis*, 943 F.3d 1260, 1270-71 (9th Cir. 2019); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). For the reasons discussed below, Plaintiff's state-created danger claim here fails on summary judgment.

**1. Plaintiff's Claims Are Governed by the Eighth Amendment, Not Substantive Due Process or State-Created Danger Case Law**

As a preliminary matter, the Court should hold that the substantive due process state-created danger body of case law does not apply to Plaintiff's claims. State-created danger cases have been recognized in situations where members of the public or other non-incarcerated victims were harmed by prisoners. *See, e.g., L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) (state-created danger § 1983 claim by nurse injured by violent inmate). However, Defendants are unaware of any prior state-created danger case where the plaintiff herself was an incarcerated



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

person complaining of harms caused by another inmate. The Supreme Court has expressly warned against "expanding the concept of substantive due process" because guideposts for doing so are "scarce and open-ended." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (citing *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L.Ed.2d 261 (1992)). "Where a particular Amendment provides an explicit textual source of constitutional protection against a sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion of Rehnquist, C.J.).

Since the Eighth Amendment governs the alleged government misconduct Plaintiff's claims are premised upon, the nebulous right to substantive due process has no application. Courts both within and outside the Ninth Circuit have rejected application of the state-created danger theory where the plaintiff is a convicted prisoner. *See, e.g., Lenoir v. Montana State,* No. CV 22-43-H-BMM, 2023 WL 315718, at *1 (D. Montana Jan. 19, 2023); *O'Bannon v. California*, No. 22-cv-00684-BLF, 2022 WL 2355538 at *3, fn. 1 (N.D. Cal. June 30, 2022) ("The state-created danger doctrine likely does not apply to prisoners, whose claims arise instead under the Eighth Amendment."); *Caruso v. Hill*, No. 1:20-CV-0084 AWI EPG (PC), 2020 WL 4018141, **10-11 (E.D. California July 15, 2020) (citing cases); *Longoria v. Texas*, 473 F.3d 586, 592 n. 8 (5th Cir. 2006); *Beenick v. LeFebvre*, 684 Fed. Appx. 200, 204-05 (3d Cir. Apr. 11, 2017). This Court should do the same and hold that Plaintiff's claims must be addressed under the framework of the Eighth Amendment, as argued above. Alternatively, under existing case law a violation of substantive due process in this context is not clearly established and qualified immunity forecloses any liability by Defendants Schulze, Simons, or Williams. *See Trevino v. Gates* 99 F.3d 911, 917 (9th Cir. 1996) (qualified immunity applies where "[a] survey of the legal landscape demonstrates the law is not sufficiently clear").



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

**2. Plaintiff Cannot Satisfy the Elements of a State-Created Danger Claim Against Defendants Schulze, Simons, or Williams**

Even if a state-created danger claim were legally valid in the context of an inmate-on-inmate assault, there is no evidence that Schulze, Simons, or Williams engaged in any actionable conduct under this type of theory. In a state-created danger case, a plaintiff must establish three elements:

> First, [the plaintiff] must show that the officers' affirmative actions created or exposed her to an actual, particularized danger that she would not otherwise have faced. Second, she must show that the injury she suffered was foreseeable. Third, she must show that the officers were deliberately indifferent to the known danger.

*Martinez*, 943 F.3d at 1271 (citing *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018)). There are no facts to satisfy any of the above elements with respect to Defendants Schulze, Simons, or Williams.

Again, Schulze, Simons, and Williams were not involved in DOC's decision to transfer Inmate Williams from a men's prison to WCCW. While Schulze may have approved the courtesy move request by Plaintiff and Inmate Williams to allow Inmate Williams to transfer into Plaintiff's cell, this action did not create or expose Plaintiff to an actual, particularized danger that did not already exist.

Plaintiff likewise cannot establish that her alleged sexual assault or harassment by Inmate Williams was a foreseeable result of allowing them to cell together. Plaintiff and Inmate Williams had compatible PRA risk identifiers, they had no history of conflict or complaints about one another, and they both voluntarily requested Inmate Williams' transfer into the cell.

Plaintiff cannot show deliberate indifference or defeat qualified immunity for the same reasons she cannot establish liability under the Eighth Amendment. Plaintiff lacks any evidence that Defendants Schulze, Simons, or Williams objectively or subjectively ignored a substantial risk of harm. And just as in the Eight Amendment context, qualified immunity requires that



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

Plaintiff show that any reasonable official would have understood that the risk of harm made allowing her to share a cell with Inmate Williams a violation of her constitutional rights.

Additionally, only conduct that "shocks the conscience" deprives an individual of substantive due process. *Sacramento v. Lewis*, 523 U.S. 833, 846-47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A state actor's conduct "shocks the conscience" where it was intended to cause harm without a legitimate governmental explanation. *Id*. at 849. Even setting aside the other deficiencies in Plaintiff's state-created danger theory, Plaintiff can make no showing that any conduct by Defendants Schulze, Simons, or Williams rose to this level of egregiousness.

**C. Plaintiff's Bodily Privacy Claim Against Defendants Schulze, Simons, and Williams Fails**

Plaintiff next asserts a claim under § 1983 based on the alleged violation of her right to bodily privacy. *Dkt. 68*, ¶74. Specifically, Plaintiff has alleged that "Defendants had a purposeful policy that discriminated against women by allowing men who identified as transgender to access women's cells, shower rooms and restrooms." *Id*., ¶75. Additionally, Plaintiff contends that "Defendants engaged in conduct . . . that allowed inmate Williams to follow women, including Plaintiff, into the showers and restrooms to leer at their exposed and naked bodies without any legitimate purpose." *Id*., ¶76. This claim fails for several reasons.

**1. Defendants Schulze, Simons, and Williams Had No Involvement in DOC's Transgender Housing Policy**

To the extent Plaintiff's bodily privacy claim is based upon the allegation that DOC's policy allowing transgender inmates access women's cells, shower rooms, and restrooms was unconstitutional, DOC's Policy 490.700, *Transgender, Intersex, and/or Gender Non-Conforming Housing and Supervision*, was issued by the Secretary of DOC, not any of the defendants in this case. *Nicholson Decl*., Exh. 5. As already discussed, Defendants Schulze, Simons, and Williams were likewise not involved in DOC's decision to transfer Inmate Williams from a men's prison to WCCW. Because Plaintiff fails to show these defendants



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

personally participated in the alleged violation, she fails to make out a claim under this theory against them. *Taylor*, 880 F.2d at 1045.

**2. Both PREA and Federal Constitutional Law Prohibit Prison Policies That Do Not Account For Gender Identity When Making Housing Decisions**

Setting aside the Defendants' lack of involvement in formulating the policy, this claim fails on the merits. The Ninth Circuit has recognized that "prisoners retain a limited right to bodily privacy," noting that "[s]hielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity." *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988) (citing *Grummett v. Rushen*, 779 F.2d 491 (9th Cir. 1985) and *Cumbey v. Meachum*, 684 F.2d 712, 714 (9th Cir. 1982)). But where an alleged infringement on this right is reasonably related to legitimate penological interests, such as equal employment opportunities for men and women in correctional settings, there is no constitutional violation. *Michenfelder*, 860 F.2d at 333-34; *Grummett*, 779 F.2d at 495-96. Because federal law requires that prisons consider gender identity when making housing decisions, DOC's policy serves a legitimate penological interest.

PREA governs state prisons, such as WCCW. 42 U.S.C. § 15609. The law mandates that prisons make individualized housing and program placements for transgender prisoners based on objective screening instruments, including whether to place such individuals in male or female facilities:

> In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

28 C.F.R. § 115.42(c); *see also* 28 C.F.R. § 115.41. Further, refusing to permit transgender women to be housed at facilities aligned with their gender identity without regard to individual circumstances violates their Constitutional rights under the Eighth and Fourteenth Amendments. *See, e.g., Doe v. Blanche*, No. 1:25-cv-286-RCL, 2026 WL 1642068, at *1



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

(D.D.C. June 7, 2026) (granting preliminary injunction against enforcement of Trump Administration Executive Order 14168 requiring transfer of transgender female inmates to male prisons where transfer would result in substantial risk of serious harm); *Kingdom v. Trump*, No. 1:25-cv-691-RCL, 2025 WL 1568238, at *17 (D.D.C. June 3, 2025) (certifying class of transgender inmates and granting preliminary injunction against Trump Administration Executive Order 14168); *See also Hecox v. Little*, 104 F.4th 1061 (9th Cir. 2024) (categorically banning transgender women and girls from participating in women's student athletics violated Equal Protection Clause and Title IX). Therefore, the type of housing policy Plaintiff suggests is appropriate – that all housing assignments be made on the basis of each inmate's sex assigned at birth without regard to gender identity – is contrary to the law. Just as the policies at issue in *Michenfelder* and *Grummett*, here DOC's transgender housing policy serves a legitimate penological interest of complying with federal law and is not an actionable infringement on the right to bodily privacy.

**3. Plaintiff's Claims of Sexual Assault or Harassment Are Governed by the Eighth Amendment, Not Caselaw Addressing Bodily Privacy**

While the Ninth Circuit and other courts have recognized a limited right of bodily privacy retained by prisoners as outlined above, this right has primarily been addressed in the context of prison searches and analyzed under the Fourth Amendment. *See, e.g., Michenfelder*, 860 F.2d at 333-34; *Grummett*, 779 F.2d at 495-96. In contrast, Plaintiff's claims that individual defendants have engaged in conduct that resulted in sexual assault or harassment by another inmate does not implicate the Fourth Amendment. Again, where a specific amendment addresses an asserted constitutional violation, that amendment should govern the analysis. *See Albright*, 510 U.S. at 273. It is well settled that the Eighth Amendment, not a more general right to privacy, governs Plaintiff's claim that DOC officials failed to protect her from assault by another inmate. *Farmer*, 511 U.S. at 833. For reasons already discussed above, Plaintiff's claims



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

against Defendants Schulze, Simons, and Williams based on failing to protect her from sexual assault or harassment fail as a matter of law.

**4. Defendants Schulze, Simons, and Williams Are Entitled to Qualified Immunity to Plaintiff's Bodily Privacy Claim**

Even if Plaintiff could show Defendants Schulze, Simons, or Williams were involved in the decision to place Inmate Williams at WCCW, at the very minimum these defendants have qualified immunity to a bodily privacy claim. Conduct violates clearly established law to defeat an official's qualified immunity only when, at the time of the challenged conduct, every reasonable person in the official's position would have understood the conduct to be unlawful. *Anderson*, 483 U.S. at 640. Again, this is a fact-specific inquiry that must take into account the information known to each individual defendant at the relevant time. *See Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991).

The authorities discussed above make clear that prisons must account for gender identity when making housing decisions for transgender inmates, particularly in situations where continuing to house them in facilities that do not align with their gender identity would result in a risk of substantial harm. Further, even non-incarcerated persons, such as university and high school students, do not have a constitutional right not to share restrooms, locker rooms, and showers with transgender persons whose gender identity differs from the sex they were assigned at birth. *See, e.g., Parents for Privacy v. Dallas School Dist. No. 2*, 326 F.Supp.3d 1075, 1099 (D. Oregon Jul. 24, 2018); *Students v. U.S. Dep't. of Educ.*, No. 16-CV-4945, 2016 WL 6134121, at *22 (N.D. Ill. Oct. 18, 2016), report and recommendation adopted, *Students v. U.S. Dep't. of Educ.,* 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017). Although Plaintiff has a limited right to bodily privacy, as an incarcerated prisoner her expectation of privacy was severely diminished. *See Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (2008). Plaintiff cannot point to any authority holding that under the facts and circumstances of this case, allowing Inmate Williams to reside at WCCW or share a cell with



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

Plaintiff was a clearly established violation of her limited bodily privacy rights. Nor can she establish that Defendants Schulze, Simons, or Williams would have understood that any of their conduct was unlawful under any authorities addressing the bodily privacy rights of prisoners.

**D. Plaintiff's Conspiracy Claim Fails**

Finally, Plaintiff's claim against the Defendants for an alleged conspiracy to violate her civil rights under § 1983 is meritless. A claim for conspiracy in violation of § 1983 requires proof of: (1) an agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in furtherance of the conspiracy; and (3) an actual deprivation of constitutional rights resulting from the agreement. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010). Although the agreement or meeting of the minds need not be overt and can be based on circumstantial evidence, some admissible evidence as opposed to speculation is required to support the conspiracy claim and each participant must share the common objective of the conspiracy. *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

Here, Plaintiff is unable to establish any of the three required elements. For the reasons already outlined above addressing the merits of each of Plaintiff's § 1983 claims, there was no deprivation of her Constitutional rights. Even if the question of whether a Constitutional violation occurred were debatable, there is no evidence – direct or circumstantial – from which an agreement or "meeting of the minds" among the defendants can be inferred. "Vague and conclusory allegations with no supporting facts are insufficient to support a conspiracy claim under §1983." *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989); *Aldabe v. Aldabe*, 616 F.2d 1089, 1090 (9th Cir. 1980). Plaintiff's § 1983 conspiracy claim therefore also must be dismissed on summary judgment.

/ / /

/ / /

/ / /



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

## VI. CONCLUSION

For all the forgoing reasons, Defendants Schulze, Simons, and Williams' motion for summary judgment should be granted and Plaintiff's claims against them should be dismissed with prejudice.

DATED this 29th day of June, 2026.

SIMMONS SWEENEY FREIMUND
SMITH TARDIF, PLLC

*/s/ John R. Nicholson*
JOHN R. NICHOLSON, WSBA #30499
711 Capitol Way S., Suite 602
Olympia, WA 98501
(360) 534-9960
John@ssslawgroup.com
Special Assistant Attorney General
Attorney for Defendants State of Washington, Department of Corrections, Lt. Dennis Simons, Carrie Ann Williams (Guajardo)

I certify this memorandum contains 8,400 words in compliance with this Court's Local Rules.



SIMMONS SWEENEY FREIMUND SMITH TARDIF PLLC
EVERGREEN PLAZA BLDG
711 CAPITOL WAY S., STE 602
OLYMPIA, WA 98501
PH.: (360) 534-9960
FAX: (360) 534-9959
BELLINGHAM OFFICE
1223 COMMERCIAL STREET
BELLINGHAM, WA 98225
PH.: (360) 752-2000
FAX: (360) 752-2771

**PROOF OF SERVICE**

I certify that on June 29, 2026 I electronically filed the foregoing with the Court through CM/ECF and served on all parties or their counsel of record a copy of this document addressed as follows:

| | |
|---|---|
| Robert Bouvatte<br>P.O. Box 14185<br>Tumwater, WA 98511<br>bob@rbouvattepllc.com<br>alisha@rbouvattepllc.com<br>rbouvattelaw@gmail.com<br>Attorney for Plaintiff | ☒ CM/ECF-Filing<br>☐ ABC/Legal Messenger<br>☒ Email |
| David Pivtorak<br>The Pivtorak Law Firm<br>611 Wilshire Boulevard, Suite 911<br>Los Angeles, CA 90017<br>david@piv4law.com<br>Attorney for Plaintiff | ☒ CM/ECF-Filing<br>☐ ABC/Legal Messenger<br>☒ Email |
| Chad Everett Arceneaux<br>Assistant Attorney General<br>Office of the Attorney General<br>1250 Pacific Ave., Suite 105<br>Tacoma, WA 98401<br>chad.arceneaux@atg.wa.gov<br>dann.graf@atg.wa.gov<br>john.unfred@atg.wa.gov<br>TORTacEF@atg.wa.gov<br>Attorney for Defendants Theresa Ayotte and Gregory Brooks | ☒ CM/ECF-Filing<br>☐ ABC/Legal Messenger<br>☒ Email |

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 29th day of June, 2026 at Olympia, WA.

*/s/ Jenny Singleton*
Jenny Singleton, Paralegal
711 Capitol Way S, Ste 602
Olympia, WA 98501
Tel: (360) 534-9960
jenny@ssslawgroup.com