The Honorable Tiffany Cartwright

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| MOZZY CLARK,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS; LT. DENNIS SIMONS; SGT. CARRIE ANN WILLIAMS A/KA/ CARRIE ANN GUAJARDO; HEIDI WHITTEMORE; OFFICER THERESA AYOTTE; OFFICER GREGORY BROOKS; and DOES 1-10.<br><br>Defendants. | NO. 3:24-cv-06058<br><br>DEFENDANT THERESA AYOTTE'S MOTION FOR SUMMARY JUDGMENT<br><br>**Oral Argument Requested**<br><br>Note Date: July 27, 2026 |

Defendant Theresa Ayotte moves the court for summary judgment dismissal with prejudice of all claims against her.

Plaintiff Mozzy Clark (FKA Alisha Betz) is a former inmate of Washington State Department of Corrections' (DOC) Washington Correctional Center for Women (WCCW). In February 2022, DOC approved Clark's request to have Christopher "Christine" Williams assigned as her cellmate. Clark, a cisgender female, shared her cell with Williams, a transgender female, until Clark made sexual misconduct allegations against Williams, which triggered a Prison Rape



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Elimination Act (PREA) investigation as well as Williams's immediate removal from Clark's cell. Clark and Williams were cellmates for a total of 10 days.

Clark filed this lawsuit against Theresa Ayotte who is a former DOC Corrections and Custody Officer, DOC itself, and several DOC employees, alleging § 1983 violations during her incarceration at WCCW. Specifically, Clark alleges four claims against Ayotte – (i) that the "State created danger" to her in housing Clark with Willaims and allegedly ignoring Clark's complaints of sexual harassment and sexual assault by Williams, (ii) deliberate indifference due to Ayotte allegedly ignoring Clark's complaints of sexual harassment and sexual assault by Williams, (iii) violation of Clark's right to bodily privacy because Williams allegedly viewed her naked body, and (iv) conspiracy to deprive Clark of civil rights through allegedly "ignoring female prisoner complaints about male prisoners at WCCW, and actively discouraging female prisoners from filing complaints."

Clark's claims fail for several reasons. *First*, Clark's claims in Ayotte's official capacity are barred by the 11th Amendment to the U.S. Constitution. *Second*, Clark's claims against Ayotte are otherwise barred in both Ayotte's official and personal capacity by the doctrine of qualified immunity because Clark cannot establish that a specific constitutional right has been violated <u>and</u> that the right was clearly established viewed in the specific context of this case. *Third*, it is undisputable that Officer Ayotte did not personally participate in the Clark/Williams cell assignment, nor did she have any authority over cellmate assignments. *Fourth*, Clark cannot show that Ayotte personally participated in ignoring complaints of sexual harassment or assault – indeed there is no evidence that Ayotte ever witnessed Williams direct any sexually harassing or sexually assaultive behavior toward Clark, and Clark admits that she never reported such behavior to Ayotte. *Fifth*, Ayotte did not cause Williams to view Clark's naked body and there is no evidence Ayotte had knowledge of any such viewing. *Sixth*, there is no recognized cause of action for conspiracy to deprive an individual of constitutional rights under § 1983 as pled by Clark; such claims arise under § 1985, which she did not plead. Moreover, even if Clark had done so, her claim still fails because



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

(i) a section 1985 claim requires a 1983 deprivation of rights as a predicate – which Clark cannot show – and, even if Clark had not predicated her 1985 claim on the same facts as her 1983 claim, (ii) she cannot establish any of the elements necessary to state a conspiracy claim. The court should grant summary judgment in Ayotte's favor and dismiss all of Clark's claims with prejudice.

## I. EVIDENCE RELIED UPON

In support of this motion, Defendant relies upon the Declaration of Theresa Ayotte, Declaration of Jennifer Van Wey, Declaration of Chad Everett Arceneaux, and all records, papers and pleadings on file with the court.

## II. FACTUAL BACKGROUND

### A. Defendant Theresa Ayotte

Theresa Ayotte is a former DOC Corrections and Custody Officer (CCO) who was assigned to WCCW during Plaintiff Clark's incarceration. Ayotte Decl. Officer Ayotte was primarily assigned to work inside inmate living units and her duties included, among other things, controlling, directing, and monitoring the activities and movement of offenders in the living unit and generally assisting with maintaining order within the prison. *Id.* In that role, Ayotte oversaw the Plaintiff, Mozzy Clark, who was known at the time as Alisha Betz. *Id.*

Officer Ayotte did not play any role in the evaluation, handling, processing, review, or approval of inmate housing requests, and did not have any role in Plaintiff Clark's housing with Williams at Clark's request. Ayotte Decl. Likewise, as a CCO, Ayotte did not have any job duties or authority over housing assignments of transgender inmates. Ayotte Decl. She also had no authority over policies or procedures related to transgender inmates, nor any authority over prison policies and procedures in general. *Id.* Moreover, before and throughout the duration of Clark and Williams joint cell assignment, Ayotte had (i) no knowledge of Williams particular criminal history, (ii) no knowledge of any allegations that Williams engaged in physically assaultive conduct, sexually harassing conduct, or conduct that could be construed as a PREA violation, (iii) never witnessed Williams engage in conduct that could reasonably be construed as a PREA violation, and



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

(iv) never received any complaint from any inmate about Williams engaging in physically assaultive conduct, sexually harassing conduct, or conduct that could be construed as a PREA violation. *Id.* Equally important, Ayotte has never discouraged Clark from reporting sexual harassment or PREA violations nor has she ever entered into any agreement or engaged in conduct for the purpose of depriving Clark, or any other person, of civil rights. *Id.*

**B. Clark's Allegations**

Clark is a former inmate of WCCW. Arceneaux Decl. Ex 1 (Clark Dep. at 40:4-7). In February 2022, Clark voluntarily submitted a request to DOC seeking to have inmate Christopher "Christine" Williams assigned as her cellmate. Clark Dep at 53:10 - 58:12. Clark is a cisgender female, and Williams is a transgender female. *Id.* DOC approved Clark's request to be housed with Williams. Clark and Williams were housed together for 10 days, during which time Clark claims Williams subjected her to sexual harassment and assault, which was ignored by prison officials.

Clark alleges Officer Ayotte violated her constitutional rights as a result of three (3) incidents. First, Clark's complaint alleges that Ayotte was involved in and/or responsible for granting Clark's request to be housed with Williams. Dkt. 8 at pg. 4, ¶ 26 (Complaint).

Second, Clark testified that one night, during the 10 days she was housed with her, Williams sat on the floor and touched Clark inappropriately under her bed covers when she was asleep. Clark Dep. at 80:25 – 83:1. See also Dkt. 8 at p. 6 (Complaint). Clark further testified that Officer Ayotte performed a routine cell check as this alleged incident was occurring –

> A. I think that [Ayotte] was doing like her rounds, like they go from door to door at night and like kind of shine the flashlight in to make sure you're in there, and she obviously seen him on the floor and was like -- knocked on the door and she's like, "What are you doing? Why are you down there? Get back up on your bed."
>
> Q. And then what did Christopher[1] do when that happened?

[1] Plaintiff generally referred to inmate Williams as Christopher throughout her deposition, and thus that name is utilized here.



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

> A. Got back up on his bed.
>
> Q. Was he -- was Christopher in that incident himself undressed at all? Was he wearing -- what was he wearing?
>
> A. I think he was in shorts and a shirt.

Clark Dep. At 81:6 -21.

According to Clark, she was asleep before the sound of Ayotte's knock woke her up. Clark Dep. at 80:25 – 83:1. Clark testified that she did not report Williams's alleged conduct to Ayotte nor did she have any conversation with Ayotte about it. *Id*.

Importantly, Clark also spoke with Dr. Jennifer Van Wey during a FRCP 35 independent psychological examination. Van Wey Decl. Clark told Dr. Van Wey, among other things, that the incidents involving Willaims ended after she awoke to Ayotte pounding on their door. *Id*. Clark said that as she woke up, she realized that Williams had a hand inside her [Ms. Clark's] underwear and was sitting on the ground again next to her bed, blocking the CO's view of her. *Id*. Clark said Williams "jerked" her hand out as CO Ayotte said, "What are you doing? Get back up on your bed." *Id*. Clark further said she was afraid when she woke up, adding, "My whole body froze. **It was dark, I don't know what [Ayotte] saw**" and that she had no recollections of what happened afterward. *Id*. Clark told Dr. Van Wey she complained about this incident to an officer the next day and was encouraged to file a PREA complaint. *Id*. (emphasis added).

Third, Clark alleges that Williams followed her around during their 10 days as cellmates. Clark testified that on one occasion she told Officer Ayotte that Williams was following her and asked Ayotte to watch Williams.

> Q. Okay. And when you -- so how many times did you speak with Ms. Ayotte about asking her to watch her follow you into the bathroom?
>
> A. I had went -- it was right after [Williams followed me to the restroom], I went and told her and I'm like, "Watch her, like she's following me everywhere and into the bathroom." And she was like, "Okay, I'll keep an eye on it."



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

> Q. Okay. And was there just one conversation where you said that to Ms. Ayotte?
>
> A. I believe so, yes.

Clark Dep. at 109:21 – 110:18.

Clark made sexual misconduct allegations against Williams on February 20, 2022, which triggered DOC to initiate a Prison Rape Elimination Act (PREA) investigation and to immediately remove Williams from Clark's cell.

On December 27, 2024, Plaintiff Clark filed her instant lawsuit. Clark has not made any other factual allegations against Officer Ayotte aside from the incidents detailed above.

A forensic analysis of the testimony and documentary evidence in this case has been completed by Dr. Alex McLearen, "a licensed clinical psychologist and retired federal law enforcement executive with more than twenty years of experience in correctional systems at the institutional and national levels." Arceneaux Decl. Ex 2 (McLearen Report, p. 1 – 2). Dr. McLearen's professional experience includes having "stood up the Department of Justice's Federal Bureau of Prisons' (BOP) national office for Women and Special Populations, where [she] provided oversight and guidance on issues affecting women and other vulnerable populations." *Id*. Dr. McLearen further has had "responsibility for drafting and executing BOP policy governing the management and housing of transgender individuals and overseeing hundreds of individualized housing determinations, treatment considerations, and accommodation decisions in secure correctional environments." *Id*. Dr. McLearen's analysis concluded, among other things, that:

> The information available to staff changed on February 20, 2022, when Ms. Clark made an allegation involving Ms. Williams and staff assisted her in initiating the report. <u>I found no evidence sexual misconduct of any kind was observed by or reported to staff prior to this date</u>. Consistent with PREA response requirements and standard correctional practice, staff immediately separated the two individuals and placed Ms. Williams in restrictive housing pending investigation of the allegations.



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

> ….
> In my professional opinion, the available documentation reflects that staff made housing decisions using the procedures established by WADOC policy and responded appropriately when new information was reported. The initial housing decision and the later separation were therefore reasonable actions taken within the parameters of policy and standard correctional practice.

Arceneaux Decl. Ex 2 (McLearen Report ¶ 77-79) (excerpted)(emphasis added).

Officer Ayotte now asks the court to dismiss Clark's claims with prejudice.

## III. ARGUMENT AND AUTHORITY

### A. Summary judgment standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." See *Liberty Lobby*, 477 U.S. at 247-48 (emphasis in original). A party opposing a motion for summary judgment may not simply rely on the "'mere allegations or denials of his pleading, but…must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 248 (quoting *First National Bank of Arizona v. Cities Service Co*., 391 U.S. 253, 288-89 (1968).

Ultimately, there is "no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 249 (citing *Cities Service*, 391 U.S. at 288-289). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id*. at 250 (internal citations omitted). The factual inquiry a court is to perform on summary judgment is the threshold inquiry of determining whether



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. See *Id*. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. All claims against Officer Ayotte in her official capacity must be dismissed based on 11th Amendment immunity

This Court should dismiss all claims against Officer Ayotte in her official capacity. Officer Ayotte, in her official capacity, is absolutely immunity from § 1983 claims, and "[a]n absolute immunity defeats a suit at the outset." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). The Eleventh Amendment precludes § 1983 actions for damages against a state in federal court. *Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d 836, 839 (9th Cir. 1997). In enacting 42 U.S.C. § 1983, Congress created a federal cause of action for the deprivation of any rights, privileges, or immunities secured by the United States Constitution and federal law. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755, 125 S. Ct. 2796, 2802-03, 162 L. Ed. 2d 658 (2005). 42 U.S.C § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Significantly, the term "person" in the statute has universally been interpreted by the courts as not including a state, state agencies, or state employees in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 2038, 105 L. Ed. 2d 45(1998). The Court opined "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id*. at 71. Thus, when acting in her official capacity, Officer Ayotte is not a "person" within the meaning of § 1983. Rather, she is an extension of the State. As such, Clark's action against Ayotte under any § 1983 theory of liability is impermissible, and Clark's official capacity claims should be dismissed with prejudice.

**C. Clark's claims are barred by the doctrine of qualified immunity**

The qualified immunity doctrine provides immunity to a public official performing discretionary functions if his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person in the official's position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Qualified immunity is an "immunity from suit rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 272 (2001).

The court addresses two elements in determining whether an official is entitled to qualified immunity: (1) whether a constitutional right has been violated considering the facts in the light most favorable to the party asserting the injury and (2) whether the right was clearly established viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Once a defendant raises qualified immunity, the burden is on the plaintiff to prove both of these elements. *Isayeva v. Sacramento Sheriff's Dept*., 872 F.3d 938, 946 (9th Cir. 2017). The court has discretion to consider these elements in any order. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

The Supreme Court has reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct.

2074, 179 L.Ed.2d 1149 (2011)). A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that "every reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Qualified immunity is a fact-intensive inquiry that considers the reasonableness of each particular defendant's conduct. *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir 2000).

The key inquiry is whether the official had "fair notice that her conduct was unlawful." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). Though fair notice "do[es] not require a case directly on point," it does require that existing precedent has put the "constitutional question beyond debate." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam). When the case law, in factual terms, does not create a bright line forbidding specific conduct, qualified immunity almost always protects the defendant. *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000). This high standard is intended to give government officials breathing room "to make reasonable but mistaken judgments about open legal questions." *Iqbal*, 563 U.S. at 743. "[I]t protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

Because Clark cannot establish that a specific constitutional right has been violated <u>and</u> that the right was clearly established viewed in the specific context of this case, her claims should be dismissed with prejudice.

**D. Plaintiff's § 1983 claims should be dismissed with prejudice**

Clark's remaining claims against Ayotte in her individual capacity should also be dismissed. To establish a claim for a §1983 violation the Plaintiff must prove (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). And, <u>to be individually liable under § 1983, an individual must personally participate in an alleged rights deprivation</u>. *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir.



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

2010). The plaintiff must also show that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). "To meet this causation requirement, the plaintiff must establish both causation in fact and proximate causation." *Id*.

**1. Plaintiff's § 1983 claim of state created danger should be dismissed because Officer Ayotte did not personally participate in the Clark / Williams cell assignment**

It is undisputable that Officer Ayotte did not personally participate in the Clark/Williams cell assignment, nor did she have any authority regarding inmate cellmate assignments. Ayotte Decl. Officer Ayotte is a former DOC Corrections and Custody Officer (CCO) who did not – and could not have – played any role in the evaluation, handling, processing, review, or approval of inmate housing requests, including not having any role in approval of Plaintiff Clark's request to be housed with Williams. *Id.* As a CCO, Ayotte did not have any job duties or authority related to inmate housing or cellmate assignments, nor any duties or authority concerning policy and procedure development for management of incarcerated individuals who identify as transgender, screening procedures, classification practices, housing determinations, reassessment requirements, or institutional responses to allegations of sexual abuse. *Id*.

Under these circumstances, Clark cannot show that Officer Ayotte personally participated in any alleged civil rights violation associated with the Clark / Williams cell assignment. See *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010). Nor can Clark show that any conduct by Ayotte was the "actionable cause of the claimed injury" – Clark cannot "establish both causation in fact and proximate causation." *Harper,* 533 F.3d 1026; McLearen Decl. Clark's claims of state created danger against Ayotte should be dismissed with prejudice.

**2. Plaintiff cannot establish the elements of a § 1983 state created danger claim**.

Even if Clark could show personal participation – which she cannot do – she cannot establish the elements of a state-created danger claim. To establish a claim on the state-created



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

danger doctrine, a plaintiff must establish: (1) "the officers' affirmative actions created or exposed her to actual, particularized danger that she would not otherwise have faced"; (2) "the injury was foreseeable"; and (3) "the officers were deliberately indifferent to the known danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).

Clark cannot show that Officer Ayotte's affirmative actions created or exposed her to actual, particularized danger that she would not otherwise have faced. As noted above, Ayotte did not have any authority or duties regarding inmate cellmate assignments and did not personally participate in the Clark/Williams cell assignment.

Clark likewise cannot show the sexual assault and harassment she claims to have experienced was foreseeable as to Officer Ayotte. Ayotte had (i) no knowledge of any alleged history of Williams engaging in physically assaultive conduct, sexually harassing conduct, or conduct that could be construed as a PREA violation, (ii) never witnessed Williams engage in conduct that could reasonably be construed as a PREA violation, and (iii) never received any complaint from any inmate about Williams engaging in physically assaultive conduct, sexually harassing conduct, or conduct that could be construed as a PREA violation.

Lastly, and for the same reasons discussed above as well as those discussed below in sub-section D3, Clark cannot show that Officer Ayotte was deliberately indifferent to any known danger that Clark was exposed to. The court should dismiss Clark's state created danger claim with prejudice.

**3. Plaintiff's § 1983 deliberate indifference claim should be dismissed because there is no evidence Officer Ayotte knew of and disregarded an excessive risk of harm to Clark**.

Plaintiff Clark cannot establish a claim of deliberate indifference. "'[A] constitutional violation occurs only where the deprivation alleged is, objectively, "sufficiently serious," [… ] and the official has acted with "deliberate indifference" to inmate health or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 825–26, 114 S. Ct. 1970, 1973, 128 L. Ed. 2d 811 (1994) (internal citations omitted).



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Deliberate indifference requires a showing that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A plaintiff cannot establish deliberate indifference through "mere negligence or isolated occurrences of neglect." *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). A prison official is deliberately indifferent *only* if he knows that a prisoner faces a substantial risk of serious harm and disregards it by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837.

Here, Officer Ayotte had no knowledge of any risk to Clark's health or safety associated with inmate Williams. Ayotte also had no duties, responsibilities, or role in the Clark / Williams cell assignment, nor did she have any duties or role in DOC's development of policies or procedures for housing of inmates, including transgender inmates. And equally important, it cannot be disputed – as there is no evidence to the contrary – that prior to and for the duration of the Clark / Williams cell assignment, Officer Ayotte had (i) no knowledge of any alleged history of Williams engaging in physically assaultive conduct, sexually harassing conduct, or conduct that could be construed as a PREA violation, (ii) never witnessed Williams engage in conduct that could reasonably be construed as a PREA violation, and (iii) never received any complaint from any inmate about Williams engaging in physically assaultive conduct, sexually harassing conduct, or conduct that could be construed as a PREA violation.

Under these circumstances, it cannot be said that Ayotte knew of and disregarded an excessive risk to Clark's health or safety; nor can it be said that Ayotte was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, or that she drew any such inference . *Farmer*, 511 U.S. at 837. See also, McLearen Decl.

To the extent Clark may argue that Ayotte performed a cell check while Williams was sitting on the floor of their cell and touching her under her bed sheets, that allegation is not evidence that Officer Ayotte observed sexually inappropriate behavior occurring. Clark testified that Ayotte said

to Williams, "What are you doing? Why are you down there? Get back up on your bed," and admits she never told Ayotte that Williams had touched her inappropriately. Moreover, Clark recently told Dr. Van Wey that she had no idea what Ayotte saw during the incident and in fact Williams was seated in a position that blacked Ayotte's view of Clark. Van Wey Decl. Clark's testimony may be some evidence that Ayotte saw Williams sitting on the floor, but it is not evidence that Ayotte observed sexually assaultive behavior or other sexual misconduct occurring. *Id.*; Arceneaux Decl. Ex 2 (McLearen Report). See also *Farmer*, 511 U.S. at 837.

Likewise, Clark's alleged single instance of telling Officer Ayotte, "Watch [Williams], like she's following me everywhere and into the bathroom," is not sufficient to show that Ayotte was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that she drew such an inference. Clark Dep. at 109:21 – 110:18; *Farmer*, 511 U.S. at 837. Clark testified that her statement to Ayotte occurred *after* Williams had already followed her to the restroom, and, in any event, such a statement by Clark does not communicate any threat of harm, or constitute a complaint of sexual harassment, sexual assault, or any conduct that could reasonably be construed as a PREA complaint. *Id.* See also, Arceneaux Decl. Ex 2 (McLearen Report).

Clark's deliberate indifference claim should be dismissed with prejudice.

**4. Plaintiff's § 1983 bodily privacy claim should be dismissed**.

The Ninth Circuit has held that the right to privacy, under the Fourteenth Amendment, includes the right to shield one's naked body from view by persons of the opposite sex. *York v. Story*, 324 F.2d 450 (9th Cir.1963); see also *Sepulveda v. Ramirez*, 967 F.2d 1413 (9th Cir.1992) (citing *York* for the notion that there is a "right to bodily privacy"); *Grummett v. Rushen*, 779 F.2d 491, 493-495 (9th Cir. 1985) (establishing right to bodily privacy in prison context). Nevertheless, Plaintiff Clark cannot establish a claim for violation of her right to bodily privacy as to Officer Ayotte. To state a claim, Clark must be able to establish "both causation in fact and proximate causation," which she simply cannot do. *Harper*, 533 F.3d 1026.

Clark cannot show that Officer Ayotte caused Williams to view her naked body. As discussed in subsections D1, D2, and D3 above, it is undisputable that Officer Ayotte did not personally participate in the Clark/Williams cell assignment. Ayotte did not have any job duties or authority related to inmate housing or cellmate assignments, nor any duties or authority concerning policy and procedure development for management of incarcerated individuals who identify as transgender, screening procedures, classification practices, housing determinations, reassessment requirements, or institutional responses to allegations of sexual abuse. Ayotte Decl. Clark's bodily privacy claim should be dismissed.

**E. Plaintiff's claim of conspiracy should be dismissed**

Contrary to Plaintiff Clark's Complaint, a cause of action for conspiracy to deprive an individual of constitutional rights arises under 42 USC § 1985, *not* § 1983 as pled by Clark. Clark's conspiracy claim should be dismissed for that reason alone. Nevertheless, even if the court were to ignore Clark's defective pleading, the claim still fails for several reasons.

**1. Clark's complaint fails to sufficiently plead a claim of conspiracy**

To plead a § 1985 claim of conspiracy to deprive a person of civil rights under § 1983, a plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. *Miller v. California*, 355 F.3d 1172, 1177 n. 3 (9th Cir.2004); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir.1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir.1989). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey*, 673 F.2d at 268; see *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977). See also, *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) ("[Plaintiff] only vaguely refers to some 'conspiracy' and hints at some tenuous link between this 'conspiracy' and the fact that he is black.").

Here, Plaintiff Clark's Complaint fails to allege sufficient particularized facts to support a conspiracy claim. Dkt. 8 (Complaint). Indeed, the Complaint does not contain any *facts* that would

support a conspiracy claim. *Id*. Clark's vague and conclusory allegations are not sufficient, and the court should dismiss her conspiracy claim with prejudice.

**2. Clark's inability to make a prima facie case of state created danger, deliberate indifference, or invasion of bodily privacy precludes her conspiracy claim**

"[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989). See also *Carpenters v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). As discussed above, Plaintiff Clark cannot establish either of her § 1983 claims in this lawsuit. She cannot establish a claim for § 1983 state created danger relative to her cell assignment with Williams because Officer Ayotte played no role and had no duties or authority relative to inmate cell assignments. Nor can she establish her § 1983 deliberate indifference claim because Ayotte had (i) no knowledge of any alleged history of Williams engaging in physically assaultive conduct, sexually harassing conduct, or conduct that could be construed as a PREA violation, (ii) never witnessed Williams engage in conduct that could reasonably be construed as a PREA violation, and (iii) never received any complaint from any inmate about Williams engaging in physically assaultive conduct, sexually harassing conduct, or conduct that could be construed as a PREA violation. Under these circumstances, Clark's conspiracy claim should be dismissed.

**3. Clark cannot establish the elements of a conspiracy claim**

The elements of civil rights conspiracy under § 1985 are (1) an agreement between defendants; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation of rights, and, because statute is only to protect against deprivations of equal protection, plaintiff must also show (5) some protected class-based, invidiously discriminatory animus lay behind the conspirators' action; and (6) that the conspiracy aimed at interfering with rights that are protected against private, as well as official,



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

encroachment. *O'Handley v. Padilla*, N.D.Cal.2022, 579 F.Supp.3d 1163, affirmed 62 F.4th 1145, certiorari denied 144 S.Ct. 2715, 219 L.Ed.2d 1318. See also *Garcia v. Grimm*, No. 1:06–cv–225–WQH (PCL), 2011 WL 817426, at *9, 2011 U.S. Dist. LEXIS 20522, at *24 (S.D.Cal. Mar. 2, 2011). The animus standard requires that the defendant engage in a course of conduct "because of, not merely in spite of, its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271–72, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989).

Clark cannot establish the elements of a conspiracy claim against Officer Ayotte, as there simply is no evidence to support this cause of action. In *Cities Service*, the Court held that the plaintiff could not rest on his allegations of a conspiracy to get to a jury without "any significant probative evidence tending to support the complaint." 391 U.S. at 290. Here, Clark's "mere allegation of conspiracy without factual specificity is insufficient to support a claim." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990). Just as in *Cities Service*, Clark's claim rests on nothing more than a mere allegation without factual specificity, and even worse, without any supporting evidence. Plaintiff's conspiracy claim should be dismissed with prejudice.

## IV. CONCLUSION

Based on the foregoing, Officer Ayotte respectfully asks the court to dismiss Clark's claims with prejudice.



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

DATED this 29th day of June, 2026.

NICHOLAS W. BROWN
Attorney General

/s/ Chad Arceneaux
CHAD EVERETT ARCENEAUX
WSBA No. 40442; OID No. 91105
Assistant Attorney General
Office of the Attorney General
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
Attorneys for Theresa Ayotte and
Gregory Brooks

**DECLARATION OF SERVICE**

I declare that on this 29th day of June, 2026, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert A. Bouvatte, Jr., WSBA No. 50220
Robert A. Bouvatte, PLLC
P.O. Box 14185
Tumwater, WA 98511
bob@rbouvattepllc.com
cassidy@rbouvattepllc.com

David Pivtorak, Cal. Bar No. 255943
david@piv4law.com

John R. Nicholson, WSBA No. 30499
Simons Sweeney Freimund Smith Tardiff PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
john@ssslawgroup.com
jenny@ssslawgroup.com
tasha@ssslawgroup.com

DATED this 29th day of June, 2026,

NICHOLAS W. BROWN
Attorney General

s/ Chad Arceneaux

CHAD EVERETT ARCENEAUX
WSBA No. 40442; OID No. 91105
Assistant Attorney General
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401-2317
Telephone: (253) 593-5243
FAX: (253) 593-2449
E -mail: Chad.Arceneaux@atg.wa.gov