The Honorable Tiffany Cartwright

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| MOZZY CLARK,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS; LT. DENNIS SIMONS; SGT. CARRIE ANN WILLIAMS A/KA/ CARRIE ANN GUAJARDO; HEIDI WHITTEMORE; OFFICER THERESA AYOTTE; OFFICER GREGORY BROOKS; and DOES 1-10.<br><br>Defendants. | NO. 3:24-cv-06058<br><br>DEFENDANTS BROOKS AND AYOTTE'S MOTION TO EXCLUDE TESTIMONY OF TYLER BOULANGER AND TYLER MOTIS |

Defendants Gregory Brooks and Therese Ayotte respectfully move the court to exclude Plaintiff Clark's purported mental health experts, Tyler Boulanger and Daxson Motis, from offering testimony and opinions in these proceedings as such evidence is irrelevant, unreliable, and unhelpful to the trier of fact. Boulanger is not a psychologist or psychiatrist but rather holds a certificate as a qualified mental health professional. Daxson is a physician's assistant. Neither have performed any psychological or psychometric testing on Clark, reviewed Clark's mental health records from the relevant time period of the incident at issue in this lawsuit and thereafter, nor have either reviewed any testimony or documents related to this case. Both



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

admit that they do not have sufficient information, and it is not within their general areas of practice, to opine as to the topics contained in Clark's witness disclosure. Both admit they cannot offer testimony as to the causation of Clark's mental health conditions or her future prognosis. Because Boulanger and Motis do not meet the requirements of Fed. R. Evid. 702 and *Daubert*, the court should exclude their expert testimony in its entirety. Likewise, because neither Boulanger nor Motis can establish causation as to the mental health conditions, they are treating Clark for, their lay fact and opinion testimony should also be excluded in its entirety.

## I. EVIDENCE RELIED UPON

In support of this motion, Defendants rely upon the Declaration of Chad Arceneaux and all papers and records on file with the court.

## II. STATEMENT OF FACTS

Plaintiff Mozzy Clark (FKA Alisha Betz) is a former inmate of Washington State Department of Corrections' (DOC) Washington Correctional Center for Women (WCCW). In February 2022, DOC approved Clark's request to have Christopher "Christine" Williams assigned as her cellmate. Clark, a cisgender female, shared her cell with Williams, a transgender female, until Clark made sexual misconduct allegations against Williams, which triggered a Prison Rape Elimination Act (PREA) investigation as well as Williams's immediate removal from Clark's cell. Clark and Williams were cellmates for a total of 10 days.

Clark received mental health treatment throughout her incarceration at WCCW. On April 24, 2024, Clark was transferred from WCCW to the Oregon Department of Corrections where she continued receiving mental health treatment throughout her incarceration in Oregon until her release from prison in April 23, 2025.

Clark subsequently filed this lawsuit alleging § 1983 violations during her incarceration at WCCW and claiming emotional damages as a result. Dkt. 68.



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

**A. Clark's Expert Disclosures**

Plaintiff Clark has identified her mental health treatment providers, Tyler Boulanger and Daxon Motis, as expert witnesses in this matter. Clark's initial witness disclosure failed to include any summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26; Arceneaux Decl. Ex 1. Defendants objected and conferred with plaintiff's counsel. Arceneaux Decl. Ex 2.

Thereafter Clark made two subsequent and equally deficient expert witness disclosures. Clark's last and most recent expert disclosure occurred on May 18, 2026, and provided the following information –

> 1. Daxson Motis, PA-C, Cascadia Health […]
> Mr. Motis is a psychiatric Physician Assistant involved in Plaintiff's treatment, and may testify as to Plaintiff's mental health condition, the examinations, findings, diagnoses, past and future treatment, and services rendered to Plaintiff, including reasonable costs, causation of injuries sustained in the subject incident, review of records of other medical providers, recommendations, prognoses, and other opinions regarding Plaintiff's injuries, including residual conditions and disabilities. Specifically, Mr. Motis will testify that he has been treating Plaintiff with medication in order to alleviate her post traumatic stress symptoms caused by he sexual harassment and assault she suffered at the hands of inmate Christopher Williams while incarcerated at WCCW. These issues, which include anxiety, agoraphobia, panic, and sleep-related issues, among others, will be her baseline for the foreseeable future and can only be moderately managed with medication. Mr. Motis will also testify that Plaintiff's treatment for these symptoms to-date has been medically reasonable and necessary.
>
> 2. Tyler James Boulanger, Cascadia Health [… ]
> Mr. Boulanger is Plaintiff's treating psychologist and may testify as to Plaintiff's mental health condition, the examinations, findings, diagnoses, past and future treatment, and services rendered to Plaintiff, including reasonable costs, causation of injuries sustained in the subject incident, review of records of other medical providers, recommendations, prognoses, and other opinions regarding Plaintiff's injuries, including residual



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

> conditions and disabilities. Specifically, Mr. Boulanger will testify regarding Plaintiff's diagnosis of post traumatic stress disorder stemming from the sexual harassment and assault she suffered at the hands of inmate Christopher Williams while incarcerated at WCCW. Mr. Boulanger will further testify that inmate Williams is the primary driver of Plaintiff's symptoms, which are currently treatment-resistant, and that Plaintiff will continue to experience these symptoms in the medium term. Mr. Boulanger will also testify that Plaintiff's treatment for these symptoms to-date has been medically reasonable and necessary.

Arceneaux Decl. Ex 3. Clark did not provide any other information as to the facts and opinions about which the witnesses were expected to testify and neither Boulanger nor Clark have ever submitted any expert report as would be required under Fed. R. Civ. P. 26. Clark also has not disclosed any other testifying expert witnesses. *Id*.

**B. Boulanger Deposition**

Tyler Boulanger holds a certificate as a qualified mental health professional (QMHP) [1] in the state of Oregon. Boulanger Dep. at 13:9 – 15:7. See also, Arceneaux Decl. Ex 4. Boulanger has been Clark's treating mental health counselor since August 2025 and as of June 2026, had met with Clark for treatment sessions approximately 8 times.

First, Boulanger testified that he has not reviewed Clark's prior mental health records in general and specifically, he has not reviewed Clark's mental health records from her period of incarceration at DOC and WCCW (the location of the alleged incidents in this case) nor any records related to Clark's treatment at the Oregon Department of Corrections, where she was transferred following her incarceration at WCCW. Boulanger Dep. at 10:24 – 12:5. As Boulanger stated – "I generally don't go into too much detail reviewing from other providers just because I don't have the time to do that with all my clients." *Id*. at 11:4-6.

---

[1] Oregon qualified mental health professionals (QMHPs) must meet minimum statutory qualifications and are generally only authorized to provide mental health treatment services under the direct supervision of a treatment services supervisor or other higher credentialed mental health professional designated to provide oversight of services provided. OAR 309-019-0125; OAR 309019-0105. See also, generally, OAR 416-070-0030; OAR 416-070-0040.



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Second. Boulanger testified that he has never administered any psychological or psychometric testing to Clark. Boulanger Dep. at 17:20-23.

Third, Boulanger testified that he has not reviewed any documents related to this case. *Id*. at 10:20 – 23. He does not know when the incidents in this case are alleged to have occurred. *Id*. at 19:4:8. Moreover, when asked about the extent of his discussions with Clark regarding the core issues of this lawsuit, Boulanger testified:

> Q. Okay. Has Ms. Clark, other than generally telling you that there was a sexual assault, has she given you any level of detail about what that sexual assault involved?
> A. No, nothing besides that apparently a transgender person was involved, and that's basically it as far as the details go.
> Q. Okay. So she has not told you specifically what this transgender roommate did to her that was sexual in nature?
> A. Correct.
> Q. Okay. Has Ms. Clark gone into a level of detail with you about her interactions with the State of Washington Department of Corrections related to the sexual assault she's alleging occurred?
> A. She has not gone into detail on that, no.

Boulanger Dep. at 19:14 – 20:4.

Fourth, regarding causation of Clark's mental health conditions, Boulanger testified that he could only base his opinions on Clark's self-reporting alone and that he had not done any forensic testing to determine whether what Clark was reporting to him was accurate or not. Boulanger Dep. at 38:23 – 40:20.

Finally, Boulanger testified that he could not offer opinions regarding Clark's prognosis because to do so would be speculative. Boulanger Dep. at 37:14 – 24. He further testified that he could not offer opinions about the reasonableness of costs of treatment because it is something he does not attest to or deal with as such questions are referred to his clinic's billing department. *Id*.



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

**C. Motis Deposition**

Daxon Motis is a physician's assistant licensed in the state of Oregon. Motis Dep. at 9:12 – 14; 10:3 – 5. See also Arceneaux Decl. Ex 6. Motis has been one of Clark's mental healthcare providers since October 2025. Motis Dep. at 21:10 – 20. As of June 2026, Motis has provided Clark with medication management treatment on 4 occasions, each via telehealth videoconference lasting about 20 minutes, the last of which was in April 2026. *Id.*

Motis testified that the scope of his treatment of Clark is limited to medication management. Motis Dep. at 13:16 – 20. Although Motis administered an initial screening questionnaire to Clark as part of his patient intake, he did not administer any specific psychological or psychometric testing. *Id*. at 15:1 – 16:8. And Motis testified that he has not discussed with Clark about the incidents alleged in this lawsuit and cannot draw any conclusions as to causation for any symptoms she claims to be experiencing. Motis Dep. at 26:25 – 27:25; 31:15 – 32:5.

> Are you spending time trying to figure out which specific traumas are causing current symptoms?
> A. I mean, I would say if -- with Mozzy, I don't think I've established enough of a rapport to really get into that kind of detail and discuss those. Again, not really too much of my role. You know, as long as there's symptoms to be treated and she's still having those, you know, that's -- that's typically what I screen for, is the presence of the symptoms. I think therapy plays more of a role in kind of connecting those things a little bit more closely.
> Q. Okay. To be able to draw conclusions about whether specific symptoms that are currently being experienced, trauma symptoms are caused by specific traumas, would you need to sit down with Ms. Clark and sort of inventory what all those traumas have been over the course of her life?
> A. Typically, yeah, we would have to get into some significant detail.
> Q. Okay. And have you done that with Ms. Clark?
> A. No. That is not something, like I said previously, that I think we have the rapport to be able to go through at this point. She's generally pretty guarded and private, and, you know, I think we've -- we're getting to a point where our rapport is good but not deep.



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Motis Dep. at 26:25 – 27:25.

> Q. Okay. The next sentence underneath what I just read, it says, "Specifically, Mr. Motis will testify that he has been treating plaintiff with medication in order to alleviate her post-traumatic stress symptoms caused by the sexual harassment and assault she suffered at the hands of Inmate Christopher Williams while incarcerated at WCCW," which stands for Washington Correctional Center For Women. Do you see that? Do you see where I just read that from?
> A. Yeah.
> Q. Okay. Am I correct, based on our prior discussion, that your treatment has not been directed at identifying any specific trauma for the symptoms that Ms. Clark is experiencing?
> A. Yes.

Motis Dep. at 31:15 – 32:5.

Motis likewise testified that he was unable to offer a prognosis for Clark other than to say, "in terms of prognosis, you know [….] I would assume that she's going to make an improvement. Exactly what that looks like for her, it's hard to say. *Id*. at 28:1-8.

Finally, Motis testified that he had "no clue" about the cost or reasonableness of costs for Clark's treatment. Motis Dep. at 32:6 – 17.

## III. ARGUMENT AND AUTHORITY

### A. Boulanger and Motis's ER 701 testimony, whether fact or opinion based, should be excluded

Boulanger and Motis's testimony as treating providers should be excluded because of Clark's failure to comply with witness disclosure requirements and because the potential testimony it falls outside the scope of ER 701.

First, no summary of facts and opinions to which either witness is expected to testify has ever been provided by Clark. Fed R. Civ. P. 26(a)(2)(C). Boulanger and Motis should be excluded on this basis alone.

Second, as treating providers, Boulanger and Motis are limited only to those observations and opinions formed during the course of treatment. *Goodman v. Staples The*



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

*Office Superstore, LLC,* 644 F.3d 817, 826 (9th Cir. 2011). For example, the court in *Yadegar* observed:

> Regardless of whether the disclosures were compliant, it would be inappropriate for the treating physicians to render expert opinions regarding the reasonableness of the expenses incurred. Again, these witnesses are limited to opinions formed during the course of treatment.
>
> In that sense, courts have held that non-retained treating physicians
>
>> may testify about the cost of past services the treating physicians themselves provided. They may not provide testimony regarding the reasonableness of the cost of past medical care, diagnostic testing, surgery and medication provided by other treating physicians, or future medical care, diagnostic testing, surgery and medications recommended by other treating physicians, and whether those medical costs fall within the usual and customary charges within the community. They are also precluded from offering opinions about Plaintiff's diminished work life expectancy allegedly cause by the accident.
>
> Green, 2020 WL 9601990, at *4 (citation omitted).

*Yadegar v. United States*, CV 24-01128-MWF (RAOX), 2025 WL 2427827, at *3 (C.D. Cal. July 1, 2025). Yet Clark's witness disclosure explicitly seeks to have Boulanger and Motis testify regarding matters unrelated to facts and opinions acquired during the course of treatment. Here, the topics contained in Clark's witness disclosure explicitly fall outside the scope of opinions formed during the course of treatment. As such the testimony should be excluded.

**B. Boulanger and Motis's testimony should be excluded under ER 401 as irrelevant and ER 403 as unduly prejudicial and likely to confuse or mislead the jury**.

Evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

action." ER 401. Boulanger and Motis both admit they cannot offer opinions about whether the mental health conditions and symptoms they are treating Clark for were caused by the incidents at issue in this lawsuit and Clark has not disclosed any other expert witnesses to offer testimony regarding causation of her alleged mental health conditions. Boulanger Dep. at 38:23 – 40:20; Motis Dep. at 26:25 – 27:25; 31:15 – 32:5. As such, any testimony Boulanger or Motis could offer about Clark's mental health treatment is irrelevant under ER 401 because there is no evidentiary basis on which a fact finder could conclude that Clark's mental health conditions or symptoms are related to the claims in this case. *Meyers v. Nat'l R.R. Passenger Corp.,* 619 F.3d 729, 734–35 (7th Cir.2010) (affirming grant of summary judgment where no evidence in the record suggested that plaintiff's doctors considered or determined the cause of his injuries during the course of treatment).

Yet, even if Boulanger or Motis's testimony were relevant – which it is not – their testimony is still inadmissible because any probative value it might have "is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time." ER 403.

Testimony that Boulanger and Motis are treating Clark for mental health conditions is inadmissible because it invites the jury to improperly conclude that Clark's need for treatment was caused by Defendants where there is no evidentiary basis for such conclusions. *Meyers,* 619 F.3d 734–35. This is particularly so since Boulanger and Motis have both testified that they cannot opine about the cause of Clark's conditions and their treatment sessions with Clark have not concerned the factual allegations of this case in any meaningful way. Further they have not performed any psychological or psychometric testing on Clark, and as treating providers they are not permitted to base their opinions on forensic records review for this case – which they have not done anyway. Where medical experts fail to base differential diagnoses on such evidence, their specific causation opinions have been excluded. See *Cooper v. Smith & Nephew, Inc*., 259 F.3d 194, 203 (4th Cir. 2001) (excluding specific causation opinion of



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

expert who "failed to conduct a physical examination of [the plaintiff] and did not speak with any of [the plaintiff's] treating physicians"); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 763 (3d Cir. 1994) (excluding specific causation opinion of expert who "did not examine the plaintiffs or review their medical records [but] simply relied on their answers to a questionnaire he had given them"). The Boulanger and Motis testimony should be excluded.

**C. Boulanger and Motis do not meet the requirements to provide ER 702 expert testimony**

Federal Rule of Evidence 702 governs the admissibility of testimony by an expert witness. The proponent of an expert witness bears the burden of establishing that the witness has sufficient knowledge, skill, experience, training, or education, such that it is more likely than not that the witness will help the trier of fact determine disputed facts. Fed. R. Evid. 702(a). An expert witness is thus permitted to testify if, but only if, the proponent establishes their testimony is "based on sufficient facts or data," "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." *Id*. (b)–(d). To carry out the gatekeeping functions required by Rule 702, district courts must ensure the proposed testimony is both "reliable" and "relevant." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019).

When assessing the reliability of expert witnesses' opinions, courts consider several non-exclusive factors, including whether the expert's theory or technique (1) can be tested; (2) has been subjected to peer review; (3) has a high known or potential rate of error; and (4) has gained general acceptance within the scientific community. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993). "These factors are meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability . . . based on the particular circumstances of the particular case." *Pyramid Techs., Inc. v. Hartford Casualty Ins. Co*., 752 F.3d 807, 814 (9th Cir. 2014) (cleaned up).



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

"Experts that rely primarily on experience must explain 'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Moussouris v. Microsoft Corp*., 311 F. Supp. 3d 1223, 1246 (W.D. Wash. 2018) (quoting Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments). Courts must ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

To establish relevance, a plaintiff must demonstrate that the expert's testimony would "assist the trier of fact in understanding the evidence or determining a fact at issue." *Daubert*, 509 U.S. at 591. Included in the question of relevance is whether the factual assumptions relied on by the witness are supported by the evidence. See 29 Wright & Miller, Fed. Prac. & Proc. Evid. §6265.2 & nn.2-3 (2d ed. 2023) ("Clearly, expert testimony does not 'help' if it is unrelated to facts at issue or is based on factual assumptions that are not supported by the evidence.") (collecting cases).

**1. Boulanger and Motis should not be permitted to provide 702 expert testimony**

First, Boulanger and Motis were not properly disclosed as testifying ER 702 experts. Neither submitted an expert report as required by Fed R. Civ. P. 26(a)(2)(B) despite discovery requests seeking such information. Any attempt by Clark to have them testify retained experts rather than treating providers should be rejected by the court.

Second, Boulanger and Motis's deposition testimony shows they cannot meet the threshold requirements of ER 702 and thus should be excluded. Both admit they cannot offer opinions about whether the mental health conditions and symptoms they are treating Clark for were caused by the incidents at issue in this lawsuit. Boulanger Dep. at 38:23 – 40:20; Motis



OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Dep. at 26:25 – 27:25; 31:15 – 32:5. Further, Boulanger and Motis admit they have not performed any psychological or psychometric testing on Clark, reviewed Clark's mental health records from the relevant time period of the incident at issue in this lawsuit and thereafter, nor have either reviewed any testimony or documents related to this case. Both admit that they do not have sufficient information, and it is not within their general areas of practice, to opine as to the topics contained in Clark's witness disclosure. For these reasons, it cannot be said that Boulanger or Motis's testimony would be "based on sufficient facts or data," "the product of reliable principles and methods," or "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702 (b)–(d). Nor can it be said that Boulanger or Motis's testimony would be helpful to the trier of fact in determining any issue in this case. 29 Wright & Miller, Fed. Prac. & Proc. Evid. §6265.2 & nn.2-3 (2d ed. 2023). Their testimony should be excluded.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request that the court exclude Boulinger and Motis from offering testimony in this case.

DATED this 29th day of June, 2026.

NICHOLAS W. BROWN
Attorney General

/s/ Chad Arceneaux

CHAD EVERETT ARCENEAUX
WSBA No. 40442; OID No. 91105
Assistant Attorney General
Office of the Attorney General
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
Attorneys for Theresa Ayotte and
Gregory Brooks

**DECLARATION OF SERVICE**

I declare that on this 29th day of June, 2026, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert A. Bouvatte, Jr., WSBA No. 50220
Robert A. Bouvatte, PLLC
P.O. Box 14185
Tumwater, WA 98511
bob@rbouvattepllc.com
cassidy@rbouvattepllc.com

David Pivtorak, Cal. Bar No. 255943
david@piv4law.com

John R. Nicholson, WSBA No. 30499
Simons Sweeney Freimund Smith Tardiff PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
john@ssslawgroup.com
jenny@ssslawgroup.com
tasha@ssslawgroup.com

DATED this 29th day of June, 2026,

NICHOLAS W. BROWN
Attorney General

s/ Chad Arceneaux
CHAD EVERETT ARCENEAUX
WSBA No. 40442; OID No. 91105
Assistant Attorney General
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401-2317
Telephone: (253) 593-5243
FAX: (253) 593-2449
E -mail: Chad.Arceneaux@atg.wa.gov