UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MOZZY CLARK,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | Case No. 3:24-cv-06058-TMC<br><br>ORDER ON DEFENDANTS' MOTION TO EXCLUDE |

Plaintiff Mozzy Clark alleges that she was sexually assaulted by her cellmate while incarcerated at the Washington Corrections Center for Women ("WCCW"), and that defendant officers of the Washington Department of Corrections failed to protect Ms. Clark and refused to address complaints about her cellmate. Dkt. 68 ¶¶ 1–7.

Defendants Theresa Ayotte and Gregory Brooks[1] ("Defendants") seek to exclude the testimony of two of Clark's non-retained damages experts, Mr. Daxson Motis and Mr. James Boulanger. Dkt. 95. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion. Mr. Motis and Mr. Boulanger may testify as treating healthcare providers but may not opine on the cause of Clark's mental health symptoms.

[1] Joined by Defendants Edwin Schulze, Dennis Simons, and Carie Ann Williams. Dkt. 97.

## I. BACKGROUND

In early 2022, Clark was incarcerated at the WCCW in Gig Harbor, Washington. Dkt. 68 ¶¶ 10, 25. While there, Clark shared a cell with a transgender inmate, Christy Williams ("Williams," or "Inmate Williams").[2] *Id.* ¶¶ 26–29. Clark alleges that Williams was a convicted sex offender who was previously incarcerated in a men's prison and in the past had been denied a transfer to WCCW because of her history of violence towards women. *See* Dkt. 106 at 3–4.[3] Clark claims that Williams sexually harassed her throughout the 10 days they shared a cell, including by rubbing her penis through her clothes in front of Clark, making sexualized comments, following Clark to the showers, and showing Clark homemade sex toys. *See id.* at 7–8. Clark claims that the individual defendants ignored her complaints about Williams and her requests that Williams be removed from her cell. *See id.* at 8–10. Ultimately, Clark alleges that Williams's misconduct culminated in Clark awaking one night to find Williams next to her bunk with her hand down Clark's pants, sexually assaulting her. *Id.* at 11. Clark claims that this was caused by Defendants' deliberate indifference to her risk of serious harm from Williams, in violation of the Eighth Amendment; that Defendants violated Clark's right to bodily privacy by allowing Williams to follow her into the showers, in violation of the Fourteenth Amendment;

---

[2] The complaint refers to Inmate Williams as "a fully intact biological male," Dkt. 68 ¶ 26, while Defendants refer to Williams as a "transgender female inmate." Dkt. 82 at 2. Consistent with Williams's stated identity and the Court's practice of treating all parties and witnesses with respect, *see* Dkt. 68 ¶ 29, this Court will refer to Williams using she/her pronouns. As discussed during oral argument on Defendants' summary judgment motions, *see* Dkt. 118, while facts pertaining to Williams's criminal history and conduct while incarcerated are certainly relevant, neither her gender identity alone nor the Court's use of her preferred pronouns is material to Clark's legal claims.

[3] Because Clark's theory of the case has evolved through the course of discovery, the Court summarizes Clark's allegations from her response to the pending defense summary judgment motions rather than the operative complaint. *See* Dkt. 106.

and that Defendants engaged in a conspiracy to violate Clark's constitutional rights. *See* Dkt. 68 ¶¶ 60–79. At the summary judgment stage, Clark abandoned her claim that Defendants had also violated her Fourteenth Amendment rights under the state-created danger doctrine. *See* Dkt. 106 at 14–15.

On June 29, 2026, Defendants Gregory Brooks and Theresa Ayotte filed a motion to exclude the testimony of two non-retained experts who treated Clark—Mr. Motis, a psychiatric physician assistant, and Mr. Boulanger, a qualified mental health professional. Dkt. 95.[4] Defendants argue that Clark's "initial witness disclosure failed to include any summary of the facts and opinions to which the witness is expected to testify." *Id*. at 3. They also contend that the experts' testimony is irrelevant, unreliable, and unduly prejudicial because the providers (1) cannot offer opinions about whether Clark's mental health symptoms were caused by the incidents in this lawsuit and (2) have not performed psychological testing on Clark or reviewed her mental health records from the relevant period. *Id*. at 9–10. Plaintiff responded on July 14, and Defendants replied on July 20. Dkts. 100, 109.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. "Expert testimony must be both relevant and reliable." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001). Before trial, "[t]he trial court acts as a 'gatekeeper' to exclude expert testimony that" does not meet these standards. *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1201 (D. Nev. 2008) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145 (1999)).

[4] Although Plaintiff's disclosures describe Mr. Boulanger as a psychologist, Dkt. 96 at 7, 28, his resume indicates that he is instead "[c]ertified as a Qualified Mental Health Professional." *Id*. at 34.

Expert testimony is relevant if it will help "the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.* (*Daubert I*), 509 U.S. 579, 591 (1993) (quoting Fed. R. Evid. 702(a)); *see also Daubert v. Merrell Dow Pharms., Inc.* (*Daubert II*), 43 F.3d 1311, 1315 (9th Cir. 1995) (explaining that relevant evidence is that which "logically advances a material aspect of the proposing party's case"), *cert. denied*, 516 U.S. 869 (1995).

Expert testimony is reliable if it "is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b), (c), (d). More generally, evidence is reliable if it "has a reliable basis in the knowledge and experience of [the relevant] discipline." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (alteration in original) (quoting *Kumho Tire*, 526 U.S. at 149). In *Daubert*, the Supreme Court set out several factors that courts consider in determining reliability:

> (1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the techniques operation; and (4) whether the technique is generally accepted.

*Neal-Lomax*, 574 F. Supp. 2d at 1201 (quoting *Daubert I*, 509 U.S. at 593–94). But these factors are not a "definitive checklist or test," *see Daubert I*, 509 U.S. at 593, and "[i]n other cases, the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire*, 526 U.S. at 150. Nor do the *Daubert* factors "necessarily apply even in every instance in which the reliability of scientific testimony is challenged." *Id.* at 151. Rather, "Rule 702 grants the district judge the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case." *Id*. at 158; *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("[A] trial court not only has broad latitude

in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." (internal quotation marks and emphasis omitted)).

## III. DISCUSSION

### A. Clark properly disclosed Mr. Boulanger and Mr. Motis as non-retained experts.

Defendants argue that Clark's "initial witness disclosure failed to include any summary of the facts and opinions to which the witness is expected to testify." *Id*. at 3. They also fault Mr. Boulanger and Mr. Motis for not "submit[ing] an expert report as required by Fed. R. Civ. P. 26(a)(2)(B) despite discovery requests seeking such information." *Id*. at 11. Clark responds that both are non-retained experts who will testify only to her treatment—not to "reconstruct every prior trauma in Plaintiff's life, apportion damages among those traumas, or offer opinions beyond the treatment relationship." Dkt. 100 at 3.

Retained experts are governed by Rule 26(a)(2)(B), which requires a detailed expert report "if the witness is one retained or specially employed to provide expert testimony in the case." *Cantu v. United States*, No. CV1400219MMMJCGX, 2015 WL 12743881, at *5 (C.D. Cal. Apr. 6, 2015) (quoting Fed. R. Civ. 26(a)(2)(B)). Non-retained experts are governed by Rule 26(a)(2)(C), which does not require an expert report but requires disclosing "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." This more limited disclosure requirement applies to "physicians or other health care professionals" to the extent their opinions were formed during treatment. *Cantu*, 2015 WL 12743881, at *5 (quoting Fed. R. Civ. 26(a)(2)(C), Advisory Committee's Notes (2010)). "[T]he critical distinction between retained and non-retained experts is the nature of the testimony the expert will provide, and whether it is based only on percipient knowledge or on information reviewed in anticipation [of] trial." *Cantu*, 2015 WL 12743881, at *5.

Mr. Boulanger and Mr. Motis are non-retained expert witnesses who were not required to provide an expert report under Rule 26(a)(2)(B). Clark's disclosures describe Mr. Motis as "a psychiatric Physician Assistant involved in Plaintiff's treatment" and Mr. Boulanger as "Plaintiff's treating psychologist." Dkt. 96-1 at 4 (initial disclosures); *Id*. at 25 (amended disclosures). Clark noted that both experts may testify as to "Plaintiff's mental health condition, the examinations, findings, diagnoses, past and future treatment, and services rendered to Plaintiff, including reasonable costs, causation of injuries sustained in the subject incident, review of records of other medical providers, recommendations, prognoses, and other opinions regarding Plaintiff's injuries, including residual conditions and disabilities." *Id*. at 25. Clark described the specifics of each witness's proffered testimony in greater detail in her amended disclosures, including that Mr. Motis treats her with medication for symptoms of post-traumatic stress and that Mr. Boulanger provides treatment for Clark's diagnosis of post-traumatic stress disorder. *Id*.

These descriptions satisfy Rule 26(a)(2)(C)'s requirements. Consistent with these disclosures and Clark's representations in her briefing, Mr. Boulanger and Mr. Motis may testify only about their percipient knowledge and not information reviewed in anticipation of trial.

**B. Mr. Boulanger and Mr. Motis may not testify as to the cause of Clark's symptoms.**

Defendants argue that Clark's providers do not meet the *Daubert* standard because "they have not performed any psychological or psychometric testing on Clark, reviewed Clark's mental health records from the relevant time period of the incident at issue in this lawsuit and thereafter, nor have either reviewed any testimony or documents related to this case." Dkt. 95 at 11–12. According to Defendants, the providers thus fail to satisfy the requirements in Federal Rule of Evidence 702(b)–(d) and "would [not] be helpful to the trier of fact in determining any issue in this case." *Id*. at 12. Much of this argument is moot because these witnesses are

testifying only as treating providers and therefore may not form opinions from the case file or other outside material. While Defendants are correct as to any proffered testimony about causation, the record shows that Mr. Boulanger and Mr. Motis have the experience and qualifications to testify on at least some of the topics listed in the amended expert disclosures.

Mr. Boulanger testified in his deposition about his credentials, his experience working with patients with posttraumatic stress disorder ("PTSD"), Clark's PTSD diagnosis and symptoms, her medical history and significant traumatic events, and Mr. Boulanger's treatment of Clark. Dkt. 101-3 at 8, 13, 14. He further testified that Clark's symptoms were "treatment resistant" and found it unlikely she would experience "drastic improvements" in the short term. *Id*. at 13, 15. He opined that "the biggest contributing factor to her symptoms these days is her trauma while incarcerated." *Id*. at 12. But Mr. Boulanger stopped short of concluding that Clark's symptoms were caused by Inmate Williams or by some earlier traumatic incident. *See id*. ("[T]he complicated thing with PTSD is that sometimes it can be multi-sourced . . . I can't really speak to anything before she was [incarcerated]."). Mr. Boulanger also admitted that he did not review materials or talk to Clark about her sexual assault by Inmate Williams. *See id*. at 7 (testifying that he knows "noting besides that apparently a transgender person was involved, and that's basically it as far as the details go.").

Mr. Motis also testified about his credentials and his treatment of Clark, including that he helped diagnose her and manage her medications. Dkt. 96-1 at 50–56. Like Mr. Boulanger, Mr. Motis testified that he had not spoken in detail with Clark about any specific traumatic event and was unable to opine on whether her symptoms were caused by Inmate Williams or Defendants. *Id*. at 57–59.

Non-retained experts "can only testify to causation as it is premised on [their] personal knowledge and observations made during the course of treatment." *Sanchez v. California*, No.

1:12-CV-01835-SAB, 2015 WL 2185186, at *9 (E.D. Cal. May 8, 2015). Given that both experts have admitted that they cannot draw conclusions about causation from their treatment, the Court finds that any such testimony would not meet the standards for relevance and reliability under Rule 702. The Court therefore GRANTS Defendant's motion to the extent that it seeks to exclude opinion testimony about the cause of Clark's mental health symptoms. This does not mean, however, that Mr. Boulanger or Mr. Motis should be prohibited from testifying about the symptoms they have observed in Clark, the diagnoses they have made, or how they have treated her conditions. Clark's theory of causation is not so complicated that it requires expert testimony to explain it to the jury. *See* Dkt. 95 at 9 (arguing that without expert testimony, "there is no evidentiary basis on which a fact finder could conclude that Clark's mental health conditions or symptoms are related to the claims in this case"). A jury could reasonably conclude from the combination of Clark's own testimony and that of her providers that Defendants' conduct was a proximate cause of her alleged damages.

Defendants also challenge the relevance of testimony in other topic areas, such as the reasonable cost of Clark's treatment. *See* Dkt. 95 at 5 ("[Boulanger] testified that he could not offer opinions about the reasonableness of costs of treatment because it is something he does not attest or deal with as such questions are referred to his clinic's billing department."). But relevance is a low bar, and a witness need only have enough personal knowledge about a topic to make their testimony helpful to a jury. For example, Mr. Boulanger may testify about whether Clark's treatment was consistent with her symptoms—a fact helpful in determining reasonable treatment costs—even if he is ignorant as to his employer's rates and billing practices. Any deficiencies in such testimony are "fit for cross-examination, not exclusion." *Bluetooth SIG, Inc. v. FCA US LLC*, 468 F. Supp. 3d 1342, 1349 (W.D. Wash. 2020). And to the extent Clark's counsel asks questions of her providers that stray beyond their personal knowledge, those

objections are better dealt with on a question-by-question basis at trial than through a *Daubert* motion.

## IV. CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' motion to exclude. Dkt. 95. Mr. Boulanger and Mr. Motis may offer fact and opinion testimony formed during their treatment of Clark—including testimony about her diagnoses, symptoms, and treatment—but they may not opine on the cause of Clark's mental health conditions.

Dated this 1st day of September, 2026.

Tiffany M. Cartwright
United States District Judge