The Honorable Tiffany M. Cartwright

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| MOZZY CLARK,<br><br>Plaintiff,<br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS; LT. DENNIS SIMONS; SGT. CARRIE ANN WILLIAMS A/KA/ CARRIE ANN GUAJARDO; HEIDI WHITTEMORE; OFFICER THERESA AYOTTE; OFFICER GREGORY BROOKS; and DOES 1-10,<br><br>Defendants. | Case No: 3:24-cv-06058-TMC<br><br>**PLAINTIFF'S TRIAL BRIEF** |



**THE PIVTORAK LAW FIRM**
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

## I. INTRODUCTION.

This trial concerns what happened after Inmate Christopher Williams ("Inmate Williams") began sexually menacing Plaintiff, Mozzy Clark ("Clark or the "Plaintiff") in their shared prison cell, and Ms. Clark repeatedly asked two (2) correctional officers for protection. Within approximately one (1) day of the cell assignment, Inmate Williams stood over Clark's lower bunk, rubbed his erect penis through clothing, and spoke directly to her about it "filling up with blood." Ms. Clark reported the conduct to Defendant Gregory Brooks and asked to be moved. Brooks accessed Williams' records – including his history of sexual crimes and record of masturbating in front of prison staff – yet proceeded to laugh off Ms. Clark's complaints.

The conduct escalated, as a result of Defendants' disregard. Inmate Williams followed Ms. Clark into bathrooms and showers, peered over the partitions, propositioned her, threatened her, "I can get you whenever I want," and repeatedly sat on the floor beside her bed at night. Ms. Clark continued reporting the conduct to Brooks. When she reported the proposition from Inmate Williams, Brooks joked that he had heard the going rate was "a bag of chips."

Ms. Clark also asked Defendant, Sergeant Carie Ann Williams, to separate the cellmates. She reported the erection-related comments and bathroom-following and said she was uncomfortable remaining in the cell. According to Ms. Clark, Sergeant Williams refused and told her to "get over it and deal with the stuff going on in and out of the cell." Brooks separately told Ms. Clark that he and Sergeant Williams had discussed a move, but that neither inmate would be moved because of COVID-related concerns and possible retaliation.

The warning signs then became physical evidence. Inmate Williams showed Ms. Clark homemade sex toys in their cell, and asked Ms. Clark to use them on him. Plaintiff reported this to Brooks, asked that the cell be searched, and expressed fear that Inmate Williams would retaliate if he were told who had reported the devices. Staff searched for, found and confiscated the objects, but the inmates remained together. That night, Ms. Clark awoke with Inmate Williams beside her bunk, a hand on her vagina, and her shirt pulled up.



**THE PIVTORAK LAW FIRM**
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

The Court has already held that this evidence permits a reasonable jury to find that both Defendants knew Ms. Clark faced a substantial risk of sexual assault and disregarded it by refusing to separate the inmates. Liability in this case will therefore turn on three (3) factual questions: (i) what each Defendant knew; (ii) whether each responded reasonably; and (iii) whether each Defendant's failure to take available protective measures caused Ms. Clark's assault and resulting harm. The testimony and contemporaneous records will show a steadily escalating danger and dismissive responses from Defendants, despite the ready availability of simple protective measures that would have prevented the assault on Plaintiff. Defendants' conduct has caused Ms. Clark to experience extreme trauma and emotional distress, the effects of which she is still suffering through to this day. She is seeking compensatory and punitive damages for Defendants' callous indifference to her pleas for help.

## II. ISSUES REMAINING FOR TRIAL

1. Whether Inmate Williams' (i) repeated and escalating sexualized conduct, (ii) threats, (iii) bathroom and shower following, and/or (iv) homemade sex toys placed Ms. Clark at a substantial risk of serious harm.

2. Whether Defendant Brooks actually knew of that risk from (i) Ms. Clark's repeated reports, (ii) his observation at the cell, (iii) the records he reviewed, (iv) the confirmed sex toys, and/or (v) the continuing absence of protection.

3. Whether Defendants Williams actually knew of that risk from (i) Ms. Clark's direct reports, (ii) Ms. Clark's request for separation, (iii) Brooks's communications with her, (iv) the confirmed sex toys, and/or (v) her supervisory role in the housing unit.

4. Whether each Defendant disregarded the known risk by failing to reasonably respond to it before the assault.

5. Whether each Defendant's conduct was an actual and proximate cause of the assault and Clark's resulting injuries.



**THE PIVTORAK LAW FIRM**
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

6. The amount of compensatory damages and, separately as to each Defendant, whether nominal or punitive damages are appropriate (and if so, in what amount).

All other claims have been dismissed with prejudice. Qualified immunity has also been resolved against Defendants Brooks and Williams, and presents no issue for the jury.

## III. GOVERNING LAW

### A. The Eighth Amendment requires reasonable protection from a known substantial risk.

Prison officials must "take reasonable measures to guarantee the safety of the inmates," including protection from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). A failure-to-protect claim has an objective and a subjective component. The prisoner must show conditions posing an objectively substantial risk of serious harm. The prisoner must also show that the defendant knew facts from which the inference of that risk could be drawn, actually drew the inference, and disregarded the risk by failing to respond reasonably. *Id.* at 834, 837, 844-45.

The inquiry is individualized. The jury must separately decide what Defendant Brooks knew and did and what Sergeant Williams knew and did. But more than one (1) person's conduct may cause the same constitutional injury. Each Defendant is liable if his or her own acts or omissions were an actual and proximate cause of the assault and resulting harm. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

### B. Sexual assault is serious harm and the risk may be proved circumstantially

There can be no serious dispute that sexual assault constitutes serious harm. See *Schwenk v. Hartford*, 204 F.3d 1187, 1197-98 (9th Cir. 2000). Nor must Ms. Clark prove that Defendants predicted the precise time, place, or manner of the assault. *Farmer* expressly permits knowledge to be inferred from circumstantial evidence and from a risk's obviousness. 511 U.S. at 842. As this Court held, *Farmer* did not require Brooks or Sergeant Williams to know "exactly how or when" the assault would occur. Dkt. 120 at 12.



**THE PIVTORAK LAW FIRM**
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

The relevant question is therefore not whether Inmate Williams announced an intent to sexually assault Ms. Clark on a particular night. It is whether repeated aggressive and sexually explicit conduct directed at a captive cellmate created an obvious substantial risk of sexual harm, and whether each Defendant actually recognized that danger. The Court has already held that a reasonable jury could answer both questions with a "yes." Dkt. 120, at 12-13.

**C. No written PREA complaint or talismanic language was required.**

The constitutional duty turns on actual knowledge of a substantial risk, not on the form of the prisoner's report. *Farmer*, 511 U.S. at 837. Ms. Clark was not required to submit a written grievance or use the term "PREA" before protection became due. A contrary rule would permit an official who understood a serious danger to ignore it because the prisoner did not know the institution's preferred label.

DOC's own reporting framework reinforces that point. Policy 490.800 permitted incarcerated people to report sexual misconduct verbally to any staff member and defined sexual harassment to include unwelcome sexual advances, requests for sexual favors, and sexual comments or gestures. Policy 490.850 required immediate reporting of knowledge, suspicion, or information concerning sexual misconduct and contemplated protective measures, including separation. These policies do not define the Eighth Amendment, but they help the jury assess what trained DOC employees would understand from Clark's reports and what responses were available.

**D. Passing information to another employee did not discharge the duty if Defendants knew that no protection resulted from their reporting.**

An official who knows of a substantial risk avoids liability by responding reasonably, even if harm ultimately occurs. *Farmer*, 511 U.S. at 844. But an incomplete communication that leaves the prisoner exposed does not become reasonable merely because some information was relayed. In *Wilk v. Neven*, the Ninth Circuit held that a jury could find a response unreasonable where deficient protective documentation left other officials unable to recognize and address the danger. 956 F.3d 1143, 1149-50 (9th Cir. 2020).



THE PIVTORAK LAW FIRM
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

Here, Defendant Brooks may contend that he spoke with Sergeant Williams. But he then told Plaintiff that no move would occur, knew she remained in the cell, continued receiving reports, and knew the search confirmed the homemade sex toys. Sergeant Williams may dispute receiving Ms. Clark's direct reports, but evidence that Officer Brooks spoke with her and that she participated in the search permits the jury to find otherwise. The question is not whether either Defendant performed some act. It is whether the response, in light of everything each knew, reasonably addressed the continuing risk.

**E. Causation must be assessed separately, but may be concurrent.**

Plaintiff must connect each Defendant's conduct to the injury, as a matter of causation. *Leer v. Murphy* 844 F.2d 628, 633 (9th Cir. 1988). She will do so through chronology and available alternatives. The jury need not choose one exclusive cause. Separate omissions may operate together to cause the same harm. Nor does Inmate Williams's intentional misconduct break the chain as a matter of law; inmate violence is the very event the failure-to-protect duty exists to prevent. See *Farmer*, 511 U.S. at 833-34. The verdict form should therefore require separate liability findings, but one nonduplicative compensatory award for the indivisible injury.

## IV. <u>EVIDENTIARY ISSUES</u>

**A. DOC and PREA policies are relevant evidence but not an independent constitutional standard.**

Plaintiff does not contend that violating a DOC policy or PREA, standing alone, establishes an Eighth Amendment violation. The policies remain relevant for narrower and proper purposes: they define terminology used in the records; show the information DOC trained staff to recognize; identify reporting and protective measures available to Defendants; provide context for whether Defendants' conduct was a reasonable response; and assist the jury in evaluating claims that Clark's reports were too informal or vague to require action. See *Lemire v. California Dept. of Corrections and Rehabilitation* 726 F.3d 1062, 1077-78 (9th Cir. 2013).



**THE PIVTORAK LAW FIRM**
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

The Court can avoid confusion through a limiting instruction explaining that DOC policy does not set the constitutional standard and that a policy violation, by itself, does not establish liability. Excluding the policies entirely would create the opposite distortion: it would ask the jury to evaluate Defendants' knowledge and options without the operational framework governing their work.

**B. Deborah Jo Wofford's testimony supplies policy and practice context without deciding liability.**

Deborah Jo Wofford previously testified as DOC's designated representative in the related state action and is expected to testify live at this trial. DOC is no longer a party in this federal action, and Plaintiff does not offer Ms. Wofford to give a legal conclusion or convert her state-court deposition into a Rule 30(b)(6) admission binding the individual Defendants here.

Her testimony is nevertheless probative, within ordinary limits. Based on her DOC responsibilities and knowledge—as current Deputy Assistant Secretary at DOC and Superintendent of WCCW during the relevant period—Ms. Wofford can authenticate and explain the policies in effect in February 2022; explain DOC terminology and processes; describe how an incarcerated person could make a verbal sexual-misconduct report; explain the reporting and protective options available to staff; and identify what institutional records ordinarily document those steps. That testimony will help the jury understand otherwise technical records and assess the reasonableness and feasibility of the responses at issue. Any question that seeks a constitutional conclusion can be addressed at trial under the appropriate evidentiary rules without excluding the underlying factual testimony.

## V. DAMAGES

**A. Compensatory and nominal damages.**

Section 1983 permits compensation for injuries caused by the constitutional violation, including physical injury and proven mental and emotional suffering. *Memphis Community School District v. Stachura*, 477 U.S. 299, 306-07 (1986). Ms. Clark will present evidence of the escalating sexual harassment, the assault, her fear, nightmares, anxiety, severe stress, and



THE PIVTORAK LAW FIRM
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

continuing psychological effects. The jury should determine one amount that fairly compensates the injury.

If the jury finds a constitutional violation but does not find compensatory injury caused by a particular Defendant, nominal damages remain available. *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978). Nominal damages recognize the violation itself and should be addressed separately from punitive damages.

**B. Punitive damages.**

Punitive damages may be awarded against an individual Section 1983 defendant whose conduct was motivated by evil intent or involved reckless or callous indifference to federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Reckless indifference is shown when a defendant acts in the face of a perceived risk that the conduct will violate federal law. *Dang v. Cross*, 422 F.3d 800, 807-09 (9th Cir. 2005). The jury must consider punitive liability and amount separately as to Brooks and Sergeant Williams.

The same evidence supporting deliberate indifference may also support punitive damages, particularly given the Defendants' dismissive reactions to Ms. Clark's pleas for help. Whether that conduct reflects the required reckless or callous disregard is a jury question. Punitive damages may be awarded even if the jury awards only nominal damages. *Dang*, 422 F.3d at 807.

## VI. CONCLUSION

Ms. Clark reported increasingly explicit sexual conduct and repeatedly asked Defendants for protection. Defendant Brooks and Sergeant Williams understood enough to discuss moving the inmates, investigate the sex toys, and reject separation. Yet neither secured an effective response until after the known danger became an assault. Under *Farmer* and this Court's summary judgment ruling, the jury must decide whether each Defendant actually recognized the substantial risk, disregarded it, and caused Ms. Clark's injuries. Plaintiff respectfully requests that the Court resolve the focused evidentiary issues identified above consistently with that narrowed framework and submit the Eighth Amendment claims and damages questions to the jury.



**THE PIVTORAK LAW FIRM**
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130

Respectfully submitted, this 5th day of October, 2026.

**ROBERT A. BOUVATTE, PLLC**

By: ________________________________
Robert A. Bouvatte, Jr., WSBA #50220
P.O. Box 14185
Tumwater, WA 98511
PH: (564) 999-4005
bob@rbouvattepllc.com
rbouvattelaw@gmail.com

**THE PIVTORAK LAW FIRM**

By: ________________________________
David Pivtorak, Cal. Bar, #255943
611 Wilshire Boulevard
Suite 911
Los Angeles, CA 90017
PH: (213) 291-9130
david@piv4law.com
*Pro Hac Vice*